[No. 11038-9-III.    Division Three.    March 12, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD LEE
PENTECOST, *Appellant.*

*Rick L. Hansen* and *Rakow & Hansen,* for appellant
(appointed counsel for appeal).

*Gerald A. Matosich, Prosecuting Attorney,* for respondent.

THOMPSON, J. — Ronald Lee Pentecost appeals his conviction for manufacturing marijuana. He contends the Superior Court erred when it denied his motion to suppress evidence seized by law enforcement officers from his campsite in an isolated area of Klickitat County. We affirm.

On August 6, 1989, a citizen complained to the Goldendale Police Department that a trespasser was camped on his property. The citizen also observed what he believed to be marijuana plants growing on his property. He directed law enforcement officers of the Goldendale Police Department and the Klickitat County Sheriff's Office to the site of the trespass. The encampment was across the creek from an old Boy Scout camp, in an area which was not posted with "no trespassing" signs.

Officers Robert Kindler and Mark Bond of the sheriff's office approached the camp. Mr. Pentecost was sitting on a chair in front of a tent. Officer Kindler informed him he was trespassing, and asked him to identify himself. When Mr. Pentecost went into his tent to get his identification, Officer Bond was able to see a shotgun inside the tent. He advised Mr. Pentecost he was going to secure the shotgun, and entered the tent for that purpose. Mr. Pentecost did not object. He told Officer Kindler he had been residing at the campsite for approximately 6 weeks.

Officer Kindler proceeded downstream some three-quarters of a mile to the marijuana site while Officer Bond remained with Mr. Pentecost. During this time, Officer Bond conducted a cursory search of the camp looking for weapons. Next to the tent, he saw a gallon of Alaska Fish Fertilizer; a second fertilizer, blue in color; and a product called "Repel", which is used to keep animals away from growing plants. Between the tent and the creek, he observed a pair of boots with a flood tread design on the sole. On top of a table outside the tent he saw an open can with nails in it. Officer Kindler radioed Officer Bond and reported finding similar fertilizers, "Repel", and nails at the marijuana site. In addition, footprints showing a flood tread

design were present at the grow location, as was green twine similar to that used in a clothesline at the campsite.

Based on the information received from Officer Kindler and on his own observations, Officer Bond arrested Mr. Pentecost for manufacturing marijuana. He conducted a pat-down search of Mr. Pentecost, and seized a small amount of marijuana from his person. He also found marijuana in the tent, and a book entitled "Marijuana Grower's Guide" in a sack outside the tent.

The court concluded Mr. Pentecost was a trespasser, with a limited expectation of privacy, if any, in *only* his tent. The court held (1) Mr. Pentecost had no expectation of privacy in the area surrounding the tent, (2) the items observed by Officer Bond at the campsite were in open view, and (3) the items seized from the tent and the sack after Mr. Pentecost's arrest were discovered in the course of a proper inventory search.

All of these items were admitted in evidence in Mr. Pentecost's bench trial for manufacturing marijuana.

■ Mr. Pentecost contends Officer Bond's entry into the area within his campsite and observation of items later used to link him to the grow operation constituted an illegal search and seizure. He cites *State v. Berber*, 48 Wn. App. 583, 740 P.2d 863, 74 A.L.R.4th 491, *review denied*, 109 Wn.2d 1014 (1987), which sets forth the 2-prong expectation of privacy test developed by the United States Supreme Court in Fourth Amendment cases:

> First, has an individual by his or her conduct exhibited a subjective expectation of privacy in a particular place or object? *Katz v. United States*, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) [(Harlan, J., concurring)]. Second, is the individual's subjective expectation of privacy one that society is prepared to recognize? *Katz*, 389 U.S. at 361. Put another way, were the individual's subjective expectations, when viewed objectively, justified under the circumstances?

(Citations omitted.) *Berber*, at 588 n.2.[1] *See also Tukwila v. Nalder*, 53 Wn. App. 746, 770 P.2d 670 (1989).

---

[1] Mr. Pentecost does not specify whether he is relying upon article 1, section 7 of the state constitution or upon the Fourth Amendment. Since he uses the

The second prong of *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) is dispositive here. Assuming Mr. Pentecost had a subjective expectation of privacy in the area surrounding his campsite, is it one that society is prepared to recognize as justified? Mr. Pentecost argues a campsite is an area which society ordinarily understands affords privacy. He analogizes it to other types of residences and their surrounding curtilage to which constitutional protections clearly apply. *See State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981).

■ Mr. Pentecost cites no direct authority for his assertion society regards unenclosed items left around a campsite as private. As for his analogy to the curtilage of a residence, we see material distinctions between a campsite and such an area. Principal among these distinctions is the fact a homeowner or tenant has the right under property law to exclude others. We know of no similar right in one who trespasses and camps upon another person's land.[2] In *State v. Dess*, 201 Mont. 456, 464, 655 P.2d 149, 153 (1982), the court relied upon the deputies' "legal right to be where they were" in holding the defendant had no reasonable expectation of privacy which would mandate suppression of items seized from the area around his pickup camper in a national forest campsite.

■ Since Mr. Pentecost was a trespasser, he has even less of an argument than the defendant in *Dess* for recogni-

---

federal "expectation of privacy" test and does not consider the six criteria for analyzing claims under the state constitution, *see State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), we treat this appeal as one brought under the Fourth Amendment.

[2]Mr. Pentecost assigns error to the court's finding he was a trespasser. Our review of the record indicates ample evidence to support this finding. Mr. Pentecost does not contend he owned the land. Apparently, he relies upon the absence of "no trespassing" signs and his allegation that people frequently camped at the old Boy Scout camp across the creek, to support a belief on his part that the landowner permitted camping on the property. However, he was not camped at the old Boy Scout camp. Thus, his reliance on past activity there is not reasonable. Moreover, the absence of "no trespassing" signs does not show an intent on the part of the landowner to permit camping.

tion of a privacy interest in his campsite. We hold Mr. Pentecost did not have a reasonable expectation of privacy in the area surrounding his tent. Officer Bond's observations while walking through the campsite,[3] coupled with the information from Officer Kindler that the same types of items were present at the marijuana grow site, gave him probable cause to arrest Mr. Pentecost. *See State v. Parker*, 79 Wn.2d 326, 485 P.2d 60 (1971) (probable cause for warrantless arrest arises from facts and circumstances that would persuade a cautious but disinterested person to believe the arrested person has committed a crime). The subsequent search of Mr. Pentecost's person in which a small amount of marijuana was discovered was a proper search incident to a valid arrest. *See State v. Fore*, 56 Wn. App. 339, 345, 783 P.2d 626 (1989) (as incident to lawful arrest, arresting officer may search the person arrested), *review denied*, 114 Wn.2d 1011 (1990).

■■ Mr. Pentecost also assigns error to the court's conclusion the marijuana in the tent and the marijuana book in the sack outside the tent were found as part of a proper inventory search. He does not support this assignment with argument or citation of authority. We therefore do not consider it. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990). In any event, the admission into evidence of the inventoried items was harmless error, *State v. Guloy*, 104 Wn.2d 412, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986), given the overwhelming other evidence that Mr. Pentecost was engaged in growing marijuana.

Affirmed.

SHIELDS, C.J., and SWEENEY, J., concur.

---

[3] A different question is presented where items are enclosed in a suitcase or some other container. *See State v. Mooney*, 218 Conn. 85, 588 A.2d 145, 154 (society generally understands the contents of luggage are entitled to remain private), *cert. denied*, ___ U.S. ___, 116 L. Ed. 2d 270, 112 S. Ct. 330 (1991).