[No. 28053-8-I.   Division One.   January 11, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES WILLIAM CUSHING, *Appellant.*

---

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Prosecuting Attorney,* and *Lee D. Yates, Deputy,* for respondent.

AGID, J. — James William Cushing appeals his convictions for aggravated first degree murder, attempted first degree murder, burglary and attempted burglary. He argues that his confession, which he asserts was involuntary, should not have been admitted, challenges the constitutional sufficiency of those portions of the information charging him with attempted crimes, and asserts that the trial court erred in denying his motion for surrebuttal argument and in making certain evidentiary rulings. We affirm.

Cushing was charged by amended information with one count of aggravated murder in the first degree, one count of attempted murder in the first degree, two counts of first degree burglary, one count of residential burglary, and two counts of attempted residential burglary. The charges were based on a series of incidents that occurred in Seattle between March 8 and August 31, 1990. On March 8, Cushing entered the DeBarros residence through an unlocked door and left an ax that was kept outside the house indoors. DeBarros called the police who dusted the ax for fingerprints. DeBarros then put the ax back outside, and it was stolen a few nights later. On March 13, Geneva McDonald was found murdered in the bedroom of her house on Queen Anne Hill, a few blocks from the DeBarros residence. She had died of multiple chopping blows to her face and upper torso inflicted by an ax which the killer left by the side of her bed. The ax was later identified as the one stolen from the DeBarros home. McDonald was also stabbed repeatedly with a pair of her own scissors and her bedroom was ransacked. A palm print found on the wall by the door leading into her bedroom and a thumbprint on the front of her sewing machine cabinet were later identified as Cushing's.

On June 17, Ian Warren, a guest sleeping in a residence in the same neighborhood, was awakened by someone who was holding him down and stabbing at him repeatedly with a knife. Warren was cut twice on his left hand but was able to ward off the intruder, who had apparently entered the house through an unlocked door. Although Warren's assailant fled, Cushing later told Seattle police that he was trying to kill Warren.

Sometime between July 5 and 19 at approximately 3 a.m., the Lewises, residents of a fourth home in the same neighborhood, awoke to hear an intruder trying to open the front door. Mrs. Lewis went to the door, saw the intruder going down the front steps, and was able to get a good look at his face. She later identified Cushing from a photo montage as the person who had tried to open her door that night. On

July 15, the occupants of a fifth home in the same neighborhood awoke about 4 a.m. to hear someone downstairs. They did not go downstairs to check because they believed it was a roommate. In the morning they discovered that the words, "fuck you bicth [*sic*]", "the killer is back", and "go to hell, you asshole" had been written on their living room walls.

On July 21, an intruder prowling around another Queen Anne Hill residence at approximately 3 a.m. peered in through the open living room window of a ground floor apartment. One of the occupants chased the intruder, took his picture, and later turned it over to the police. Finally, on August 21, an intruder entered the Derse residence in West Seattle and wrote the words, "fuck you Seattle", "kiss my ass bicth [*sic*]", "the killer is back", and "good by bicth [*sic*]" on the walls and furniture. A second ax which had been stolen from another home was left in the Derse residence. A palm print and a fingerprint found in the home matched those found in the McDonald home and, on September 13, they were positively identified as Cushing's.

The fingerprint identification allowed Seattle police detectives to identify the man in the photograph as James William Cushing. Cushing was living on the streets at the time and had a long history of destructive behavior and numerous contacts with the mental health system in Washington.[1] He was arrested at Steve's Broiler in downtown Seattle at approximately 11:45 p.m. on the evening of September 13, 1990. Cushing agrees that he was asked no questions of an incriminating nature on the way to the police station. After being read his *Miranda*[2] rights, he provided police with a videotaped confession that confirmed details of all the crimes with which he was charged.

Cushing was found competent to stand trial, subject to ongoing competency evaluations. He entered a plea of not

---

[1]Experts at trial testified that Cushing is mildly "mentally retarded" and that he is also mentally ill.

[2]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

guilty by reason of insanity, but he was ultimately convicted on all counts.

## I
### ADMISSIBILITY OF CONFESSION

Cushing first contends that his confession was improperly admitted at trial because it was involuntary under the totality of the circumstances test. He argues that his mental disability and mental illness deprived him of the capacity to make a voluntary confession or to knowingly, intelligently and voluntarily waive his *Miranda* rights.

██ For due process purposes, the test to determine voluntariness is:

> "[W]hether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined — a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth."

*State v. Braun*, 82 Wn.2d 157, 161-62, 509 P.2d 742 (1973) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544, 5 L. Ed. 2d 760, 81 S. Ct. 735 (1961)).

> Whether a confession is free and voluntary is not determined by whether the officer's conduct is shocking or the confession is cruelly extorted, but whether it was extracted by any sort of threats, violence, or direct or implied promises, however slight. A confession that is the product of coercion, physical or psychological, is involuntary and not admissible.

*State v. Riley*, 17 Wn. App. 732, 735, 565 P.2d 105 (1977), *review denied*, 89 Wn.2d 1014 (1978); *State v. Davis*, 34 Wn. App. 546, 550, 662 P.2d 78 (citing *Malloy v. Hogan*, 378 U.S. 1, 7, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964)), *review denied*, 100 Wn.2d 1005 (1983).

The voluntariness of a confession is determined by examining the totality of the circumstances in which the confession was made. *State v. Rupe*, 101 Wn.2d 664, 679, 683 P.2d 571 (1984). Factors a court may consider include the defendant's physical condition, age, experience, mental abilities, and the conduct of the police. *Rupe*, 101 Wn.2d at 679; *State v. Forrester*, 21 Wn. App. 855, 863, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979). While mental illness

or mental retardation are clearly factors that must be considered, these conditions do not necessarily require the conclusion that the confession was involuntary. *State v. Ortiz*, 104 Wn.2d 479, 484, 706 P.2d 1069 (1985), *cert. denied*, 476 U.S. 1144 (1986); *State v. Hoyt*, 29 Wn. App. 372, 380, 628 P.2d 515, *review denied*, 95 Wn.2d 1032 (1981).[3]

■ ■ In order to be voluntary under *Miranda*, a confession must be made after the defendant is fully advised of his rights and knowingly and intelligently waives them. *State v. Davis*, 73 Wn.2d 271, 282, 438 P.2d 185 (1968). The test is whether a defendant knew that he had the right to remain silent, not whether he understood the precise nature of the risks of talking. *State v. McDonald*, 89 Wn.2d 256, 264, 571 P.2d 930 (1977), *overruled on other grounds in State v. Sommerville*, 111 Wn.2d 524, 530-31, 760 P.2d 932 (1988). A trial court's determination of voluntariness will not be disturbed on appeal if there is substantial evidence in the record from which the trial court could have found by a preponderance of the evidence that the confession was voluntary. *State v. Ng*, 110 Wn.2d 32, 37, 750 P.2d 632 (1988).

---

[3]*Colorado v. Connelly*, 479 U.S. 157, 93 L. Ed. 2d 473, 107 S. Ct. 515 (1986) does not apply to this case and, in any event, it did not change the law in Washington. First, *Connelly* is distinguishable on its facts. There, the police were not aware that the suspect, who confessed because "voices" told him he must, was mentally ill, and he did not appear at all unusual during the custodial interrogation. 497 U.S. at 161. Here, the police were aware that Cushing was mentally retarded and at least one officer knew that Cushing was also mentally ill. Second, even under *Connelly*, when police are aware of a condition that impacts a suspect's ability to either understand or validly waive *Miranda* rights, exploitation of that condition would constitute police misconduct which would make the resulting confession inadmissible. Thus, a suspect's mental disability, when known to the police at the time of interrogation, is one of the factors to be considered in determining the voluntariness of a confession under *Connelly*, 479 U.S. at 165, as well as under Washington law.

It is also not necessary to reach the question raised by Cushing of whether the Washington Constitution provides greater protection for mentally ill or disabled suspects than does the federal constitution. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). The federal and state due process clauses are virtually identical, and Cushing has given us no compelling reason to conclude that under the Washington Constitution, mental illness or disability alone can render a confession involuntary.

Our review of the record in this case indicates that the trial court's conclusion that Cushing's confession was voluntary is supported by substantial evidence. Officers read Cushing his rights at least four times and carefully explained them. They told him, for example, that his right to remain silent meant that he did not have to talk to them if he didn't want to and pointed out that there was no attorney present. They also read the waiver form to Cushing and explained it with care.[4] The detectives spoke to Cushing in a normal, nonthreatening manner. They relied primarily on open-ended questions, showing him photographs of the various residences involved and allowing him to tell them whether he was familiar with each residence and, if so, why. The detectives did not press Cushing when he indicated that he did not remember. They offered him breaks, coffee and water and ended the interview when he said he was tired. The defendant himself concedes that the officers' actions would not intimidate or coerce a "normal" person. In fact, the precautions taken by the detectives in conducting the interview were clearly intended to take Cushing's mental impairments into account.

Where, as here, the defendant himself concedes that the confession would be voluntary if he were not mentally disabled, the impact of that condition on the voluntariness of the confession becomes the only issue.[5] We have indepen-

---

[4]Dr. Kenneth Muscatel, a licensed clinical psychologist, testified as a defense expert. He stated that when he interviewed Cushing some time after his arrest, Cushing was able to recite the *Miranda* warnings. Dr. Muscatel also said that Cushing had a basic understanding of those rights and knew, for example, that "remain silent" meant "not talking". Dr. Gregg Gagliardi, a psychologist at Western State Hospital, testified for the State. He discussed Cushing's particular interest in violent movies and his greater-than-average exposure to the legal procedures related to major crimes.

[5]To the extent that Cushing argues that the trial court failed to consider his mental condition in ruling that the confession was admissible, that argument is not supported by the record or the trial court's findings and conclusions. No error has been assigned to any of the extensive findings and conclusions. They establish that the trial court viewed the videotape and considered Cushing's mental condition in ruling on the admissibility of the confession. Unchallenged findings of fact are verities on appeal. *State v. Harris*, 106 Wn.2d 784, 790, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987).

dently reviewed the videotape of Cushing's confession and agree with the trial court that his demeanor during the course of the interview, his comprehension of events, and his memory of the crimes all indicate that his participation in the interview was not the product of an overborne will. There is no indication that the detectives exploited Cushing's mental condition to obtain the confession. The videotape also does not support Cushing's contentions that he was suffering from lack of sleep or that his confession was extracted in return for a promise that he would go to Western State Hospital or be on television. Cushing's confession was not involuntary under the totality of the circumstances even when his mental illness and retardation are considered.[6]

The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. *See* RCW 2.06.040; CAR 14.

SCHOLFIELD and BAKER, JJ., concur.

Review denied at 121 Wn.2d 1021 (1993).

---

[6]Cushing's argument that he was denied equal protection of the law because RCW 13.40.140 was not applied to him is also without merit. That statute requires a waiver of *Miranda* rights by the parent or guardian of a juvenile under 12. Although one expert testified that Cushing's intellectual and emotional development was equivalent to that of a preadolescent boy of 8 or 9, the trial court made no finding concerning Cushing's mental age. In any event, there is no basis for an equal protection argument here because Cushing and the children to whom RCW 13.40.140 applies are not similarly situated. An adult whose limited intellectual and emotional development is compounded by mental illness and whose life experience is four or five times as long as that of a child is not the same as or in a position similar to a child. *See State v. Smith*, 117 Wn.2d 263, 276-78, 814 P.2d 652 (1991).