[No. 30869-6-I.    Division One.    September 7, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. LANCE J. CLEATOR, *Appellant.*

*Dennis Lee Burman* and *Carey, Burman & Passey,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

COLEMAN, J. — Lance Cleator, a juvenile, appeals the disposition order finding him guilty of residential burglary. Cleator claims that the arresting officer's warrantless seizure of stolen property violated Cleator's constitutional rights. In addition, Cleator claims that his confession was the fruit of an unconstitutional search and seizure. We affirm.

On January 24, 1992, Everett Police Officer Donald Denevers responded to a call reporting a residential burglary. At the scene, Officer Denevers was told that several envelopes, a Mason jar, and two Crayola children's banks, each containing money, had been taken that day. Denevers assumed that the burglar had come through the woods behind the house because the point of entry appeared to be a rear window, there was a gate in the back fence providing access to the woods, and the woods provided good cover. He entered the woods to investigate, and about 150 yards behind the house he discovered a 6-person tent with a fire smoldering in front of it. He saw no one and when he called out, no one answered. The wooded area was not a campground, and the officer believed that the tent was on city property.

After determining that no one was in the tent vicinity, Officer Denevers stepped up to the tent entrance and lifted the opaque flap, which was not tied or secured in any way. Officer Denevers testified that he looked into the tent for officer safety to ensure that no one was hiding inside with a weapon. Underneath the tent flap, the mosquito mesh was zipped closed, and Denevers looked through the mesh and saw a Mason jar with some coins in it just 2 feet inside the tent entrance. Beside the Mason jar were several coin rolls, similar to the ones that had been reported missing. After making sure there was no one hiding in the trees or bushes, Officer Denevers unzipped the tent opening, took the Mason jar and the coin rolls from the tent, and carried them back to the resident of the home. She identified them as hers, and the Mason jar and coin rolls were impounded.

The next day Denevers went back to the tent with Officer Ann Bakke to see who was living there. When they arrived, they found three individuals outside the tent — Lance Cleator and Kahere Sidiq, who had spent the night in the tent, and Cleator's cousin, who had been visiting for a couple of hours. Officer Denevers told the juveniles that he was investigating a burglary and had found evidence in the tent, but Denevers did not indicate what that evidence was. Officer Denevers then advised the juveniles of their *Miranda*[1] rights, and each, including Cleator, said that they understood. Cleator and Sidiq were arrested for possession of stolen property. In addition, Cleator was taken into protective custody because he was a runaway.[2]

Officer Bakke drove Lance to the station. During the drive she asked Cleator how he had gotten the money, and Cleator admitted that he and Sidiq had gone into the house through the back slider. Cleator described how they got the Crayola coin banks, envelopes, money, and coins, and he stated that when they returned to the campsite, they emptied out the Crayola banks and burned them.

At the station, Cleator was again read his *Miranda* rights, and he gave a written statement. Cleator was charged with residential burglary in violation of RCW 9A.52.025.

Before trial, Cleator moved to suppress the property recovered from the tent on the grounds that he had a reasonable expectation of privacy in the tent and that the search was warrantless. Cleator also moved to suppress his confession on the grounds that it was involuntary and the fruit of an

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[2] During juvenile proceedings, Cleator testified that he had been a runaway for 4 or 5 days and had previously lived at home with his mother, who fed him, clothed him, and gave him spending money. Cleator also stated that Sidiq was the owner of the tent, that Sidiq had invited Cleator to stay with him as long as Cleator liked, and that Cleator had spent a day and a night in the tent before he was arrested.

illegal arrest. Cleator's motions were denied. Lance Cleator was found guilty of residential burglary and given a disposition within the standard range. Cleator appeals.

We initially consider whether the police officer's warrantless seizure of stolen property violated Cleator's Fourth Amendment[3] rights. "To determine whether a search necessitating a warrant has taken place under U.S. Const. amend. 4, the inquiry is whether the defendant possessed a 'reasonable expectation of privacy.' " *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984); *see also Katz v. United States*, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). An individual wrongfully camping on private property has no "reasonable expectation of privacy in the area surrounding his tent". *State v. Pentecost*, 64 Wn. App. 656, 659-60, 825 P.2d 365 (1992). While no Washington cases directly address whether a squatter has a reasonable expectation of privacy *inside* his tent, the *Pentecost* court noted, in dicta, the trial court's conclusion that Mr. Pentecost had "a *limited expectation of privacy, if any*, in *only* his tent." (Some italics ours.) *Pentecost*, at 658.

Most courts have rejected an individual's claim to a right of privacy in the temporary shelter he or she wrongfully occupies on public property.[4] No reasonable expectation of privacy has been found in a squatter's home under a bridge,

---

[3] The fourth amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[4] Only one court has suggested in dicta that "a reasonable expectation of privacy should attach" to a shelter for the homeless. *See Commonwealth v. Peterson*, 408 Pa. Super. 22, 53 n.2, 596 A.2d 172, 188 (1991) (in opinion affirming the warrantless search of an uninhabitable abandoned store front, dissenting judge and concurring judge agreed that if the abandoned store front had been a shelter for the homeless, privacy rights should have attached). With the exception of this one case, Cleator acknowledges that the cases directly on point favor the position urged by the State.

*State v. Mooney,* 218 Conn. 85, 94, 98-99, 588 A.2d 145, 152, 154 (1991) (privacy right in duffel bag and cardboard box stored under the bridge, but not in the defendant's home under the bridge), *cert. denied,* ___ U.S. ___, 116 L. Ed. 2d 270, 112 S. Ct. 330 (1991); in a squatter's home in a cave on federal land, *United States v. Ruckman,* 806 F.2d 1471, 1472-73 (10th Cir. 1986) (no reasonable expectation of privacy in a cave from which defendant could be ejected at any time); or in a squatter's home on state land, *Amezquita v. Hernandez-Colon,* 518 F.2d 8, 11 (1st Cir. 1975) (no reasonable expectation of privacy on land which squatters had no right to occupy), *cert. denied,* 424 U.S. 916, 47 L. Ed. 2d 321, 96 S. Ct. 1117 (1976). Thus, if an individual

> places his effects upon premises where he has no legitimate expectation of privacy (for example, in an abandoned shack or as a trespasser upon another's property), then he has no legitimate reasonable expectation that they will remain undisturbed upon [those] premises.

4 W. LaFave, *Search and Seizure* § 11.3(c), at 305 (2d ed. 1987) (quoting Gutterman, *"A Person Aggrieved": Standing to Suppress Illegally Seized Evidence in Transition,* 23 Emory L.J. 111, 119 (1974)). Further, where "an individual has no reasonable expectation of privacy in a particular area, the police 'may enter on a hunch, a fishing expedition for evidence, or for no good reason at all.' "[5] *State v. Petty,* 48 Wn. App. 615, 620, 740 P.2d 879 (quoting *State v. Bell,* 108 Wn.2d 193, 205, 737 P.2d 254 (1987) (Pearson, C.J., concurring)), *review denied,* 109 Wn.2d 1012 (1987).

---

[5]"[T]he constitutionality of the officer's action is not undermined by the officer's reasons for approaching the house. An officer's underlying intent or motivation is irrelevant to the judicial inquiry into the lawfulness of the officer's conduct. *See* 1 W. LaFave, *Search and Seizure* § 1.4(e) (2d ed. 1987). Whether a constitutional violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting the officer at the time and not on the officer's actual state of mind at the time the challenged action was taken. *Maryland v. Macon,* 472 U.S. 463, 470-71, 86 L. Ed. 2d 370, 105 S. Ct. 2778 (1985)[.]" *State v. Petty,* 48 Wn. App. 615, 620, 740 P.2d 879, *review denied,* 109 Wn.2d 1012 (1987).

■ Lance Cleator and Kahere Sidiq wrongfully occupied public land by living in a tent erected on public property.[6] The public property was not a campsite, and it is undisputed that neither Cleator nor Sidiq had permission to erect a tent in that location.[7] Under these circumstances, he could not reasonably expect that the tent would remain undisturbed. As a wrongful occupant of public land, Cleator had no reasonable expectation of privacy at the campsite because he had no right to remain on the property and could have been ejected at any time. *See United States v. Ruckman, supra,* and *Amezquita v. Hernandez-Colon, supra.* Under the totality of the circumstances and taking into account that the tent was not his, that the tent was a temporary, unsecured shelter, and that it was wrongfully erected on public property which was not a campsite, Cleator's legitimate privacy expectations, to the extent they existed, were limited to his personal belongings. *See Mooney,* at 94 (privacy right only in duffel bag and cardboard box); *Ruckman,* at 87 (Ruckman's cave and personal belongings not subject to Fourth Amendment protection). Officer Denevers only raised the tent flap and observed what was clearly visible and seized only that which he knew to be wrongfully obtained. Because he did not disturb Cleator's personal effects, his actions did not violate Cleator's limited expectation of privacy.[8]

■ Finally, we determine whether the police officer's warrantless seizure of stolen property violated article 1, section

---

[6]While Cleator takes issue with the State's characterization of him as a trespasser, he acknowledges that his presence on the property was wrongful.

[7]The court's findings of fact stated that neither Cleator "nor any party he was with had permission to erect a tent on the property". Finding of fact 8. Cleator assigns no error to the Superior Court's finding on this issue, and thus it is treated as a verity on appeal. *State v. Cushing,* 68 Wn. App. 388, 394 n.5, 842 P.2d 1035 (citing *State v. Harris,* 106 Wn.2d 784, 790, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940, 94 L. Ed. 2d 781, 107 S. Ct. 1592 (1987)), *review denied,* 121 Wn.2d 1021 (1993).

[8]Although Cleator argues that the tent was his home, he assigns no error to the Superior Court's finding that the tent was not Cleator's home or the home of any other party. Finding of fact 2.

7 of the Washington State Constitution.[9] "[U]nder the Washington Constitution the relevant inquiry for determining when a search has occurred is whether the State unreasonably intruded into the defendant's 'private affairs.'" *Myrick*, at 510. The analysis under article 1, section 7 "focuses on those privacy interests which citizens of this state *have held, and should be entitled to hold*, safe from governmental trespass absent a warrant." (Italics ours.) *Myrick*, at 511.

Although article 1, section 7 provides greater protection for privacy interests than the Fourth Amendment, *Myrick*, at 510-11, Cleator's claim of unreasonable search and seizure also fails on independent state grounds. No case has been cited nor has our research disclosed any authority indicating that our citizens have ever held unlimited privacy rights to property they wrongfully occupied. We hold that Officer Denevers' look into the tent and limited entry to retrieve stolen property did not unreasonably intrude into Cleator's private affairs because Cleator's personal effects were not disturbed.

Because Officer Denevers' retrieval of stolen property did not violate Cleator's state or federal constitutional rights, we do not address whether the court erred in considering Cleator's confession.

The order of the trial court is affirmed.

WEBSTER, C.J., concurs.

BAKER, J. (dissenting) — The fourth amendment to the United States Constitution protects citizens against unreasonable searches and seizures. The protection afforded our citizens by this fundamental constitutional right "depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded

---

[9]Article 1, section 7 of the Washington State Constitution provides:
"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

place." *Rakas v. Illinois*, 439 U.S. 128, 143, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978).

In holding that Cleator had no legitimate expectation of privacy in the tent, the majority focuses on the fact that neither Cleator nor his companion had permission to erect the tent on public property. In *Rakas*, however, the Supreme Court made clear that one's Fourth Amendment rights could no longer be determined by blind adherence to such outmoded property-rights-based considerations as whether one is legitimately on the premises. While one's status as trespasser, licensee or invitee clearly has some bearing on the legitimacy of one's expectation of privacy, mechanistic application of the property-rights test has been rejected in favor of an inquiry into whether the expectation of privacy is legitimate and one that society is willing to recognize. *See Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

In *State v. Mooney*, 218 Conn. 85, 588 A.2d 145, *cert. denied*, ___ U.S. ___, 116 L. Ed. 2d 270, 112 S. Ct. 330 (1991), for example, the Supreme Court of Connecticut held that while a homeless defendant did not have a reasonable expectation of privacy in the general area underneath a highway bridge abutment which the defendant regarded as his home, the defendant did have a reasonable expectation of privacy in the contents of a duffel bag and cardboard box located under the bridge abutment. This latter holding rested on the court's recognition of society's "general understanding that the contents of luggage and other closed containers are entitled to remain private." *Mooney*, at 99.

In this case, Cleator had a legitimate expectation of privacy in the tent, just as the defendant in *Mooney* had a reasonable expectation of privacy in the duffel bag and box. First, Cleator exhibited his subjective expectation of privacy by storing his personal belongings in the tent and securing the tent by zipping the mesh door and lowering an opaque flap down over the door when he left for the day. Second, such an expectation of privacy is reasonable and one that

society has already demonstrated it is willing to recognize. *See, e.g., State v. Mooney, supra* (homeless person has legitimate expectation of privacy in contents of duffel bag and cardboard box); *State v. Pentecost,* 64 Wn. App. 656, 660 n.3, 825 P.2d 365 (1992) (recognizing in dicta that while a trespasser has no legitimate expectation of privacy in the unenclosed items left around a campsite, "[a] different question is presented where items are enclosed in a suitcase or some other container"); *Tukwila v. Nalder,* 53 Wn. App. 746, 770 P.2d 670 (1989) (reasonable expectation of privacy in toilet stall of a public restroom).

To hold that Cleator had no legitimate expectation of privacy inside the tent means just that — he could not even validly object to a search of the tent if he had been present at the time. This was not a case of trespassers illegally occupying public or private property in face of a legal directive to leave. This was open, publicly owned forest with no record indication that tents were prohibited. Tents are by nature intended to protect against the elements and provide a measure of privacy. I believe that societal norms recognize that expectation of privacy.

Because Cleator had a reasonable expectation of privacy in the tent, the guaranties of the Fourth Amendment apply. Accordingly, the warrantless search must be justified by one of the closely and jealously guarded exceptions to the warrant requirement. While the officer testified that he lifted the tent flap for purposes of officer safety, the record in this case does not support such a claim. When the officer called out, there was no reply, nor was there any other indication that anyone was in the area. Compare *United States v. Rigsby,* 943 F.2d 631 (6th Cir. 1991) (warrantless search of tent by lifting unzipped flap justified as a "protective sweep" where officers had reason to believe an armed individual was in the immediate area), *cert. denied,* ___ U.S. ___, 117 L. Ed. 2d 496, 112 S. Ct. 1269 (1992).

The role of the neutral and detached magistrate under the Fourth Amendment's warrant requirement ensures that the

element of police discretion in conducting searches will be minimized. As Justice Stewart wrote in *Katz*,

> [t]hese considerations do not vanish when the search in question is transferred from the setting of a home, an office, or a hotel room to that of a telephone booth. Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures.

*Katz*, 389 U.S. at 359. I would hold that Cleator had a reasonable expectation of privacy in the tent and that the warrantless search was not justified.

Reconsideration denied October 6, 1993.

Review denied at 123 Wn.2d 1024 (1994).