[No. B088241. Second Dist., Div. One. Oct. 3, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MAJOR LEE THOMAS, Defendant and Appellant.

## COUNSEL

Lisa M. Bassis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Emilio E. Varanini IV, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VOGEL (Miriam A.), J.**—After the trial court denied Major Lee Thomas's motion to suppress evidence obtained in a warrantless search of his "residence"—a cardboard box located on a public sidewalk—Thomas pled no contest to one count of receiving stolen property. He now appeals, contending he had a reasonable expectation of privacy in his box and that his motion should have been granted. We affirm.

### FACTS

Early one morning, Los Angeles Police Department Officers Dennis Moeller and Russell Long responded to a burglary call at Lucy's Fashions, a

manufacturer of denim clothing, where a witness reported that a man had thrown boxes and bags of clothing from a second floor window to two other men on the street below the window who then ran off with the boxes and bags. A search of the premises revealed a forced entry, with boxes and clear plastic bags of denim clothing stacked near a window.

Earlier that morning, Officers Moeller and Long had observed a group of men at a nearby corner (Fourth and Towne Streets) examining some denim clothing. With the obvious connection between that observation and the burglary at Lucy's, the officers returned to the corner of Fourth and Towne where they found several homeless people, some in blankets, some in boxes, others in makeshift shelters. The officers approached a box located where the men with the clothing had been gathered. Officer Moeller "banged" on the box, said "police" a couple of times, waited about ten seconds, then lifted a corner of the box and peered in. Both officers then saw a clear plastic bag of denim clothing similar to the bags used at Lucy's, and they saw Thomas and a woman asleep in the box. When requested, Thomas and the woman stepped out of the box and Thomas obligingly explained that he had the clothing because a friend had "ripped it off." The clothing was later identified as part of the loot taken from Lucy's. Thomas was arrested and charged with one count of receiving stolen property.

Thomas moved to suppress the evidence taken from the box. At the hearing, he testified that he began living on the public sidewalk at Fourth and Towne Streets in February 1993 (the burglary was in July 1994), in a 4-sided, 4 foot by 12 foot "residence" made of wooden pallets and heavy cardboard and propped against the wall of a building. The structure blocked 4 feet of the 10-foot wide sidewalk, had no electricity or other utilities and no locks. Thomas conceded he had no permit for the structure and that he paid no rent or taxes for the use of the property (and the trial court found that his sidewalk residence constituted a violation of section 41.18 of the Los Angeles Municipal Code).[1] Thomas also conceded that in December 1993, around Christmastime, a City of Los Angeles street maintenance crew had

---

[1]Subdivision (a) of section 41.18 of the Municipal Code provides that "[n]o person shall stand in or upon any street, sidewalk or other public way open for pedestrian travel or otherwise occupy any portion thereof in such a manner as to annoy or molest any pedestrian thereon or so as to obstruct or unreasonably interfere with the free passage of pedestrians." Subdivision (d) of the same section provides that "[n]o person shall sit, lie or sleep in or upon any street, sidewalk or other public way." We summarily reject Thomas's suggestion that section 41.18 violates the constitutional prohibition against cruel and unusual punishment (1) because it was raised for the first time in his reply brief (*Stoll* v. *Shuff* (1994) 22 Cal.App.4th 22, 25, fn. 1 [27 Cal.Rptr.2d 249]; *People* v. *Roberts* (1992) 2 Cal.4th 271, 340-341 [6 Cal.Rptr.2d 276, 826 P.2d 274]); and (2) because such a constitutional attack requires a showing that "punishment under the ordinance, in *all its possible applications*, is cruel, unusual or both." (*Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069, 1111 [40 Cal.Rptr.2d 402,

hauled away his box (along with the boxes and other makeshift shelters of all the homeless people residing in that area). Sometime thereafter, Thomas rebuilt and slept nightly in his box until July 17, 1994.

The trial court denied the motion, finding that any expectation of privacy Thomas might have had was objectively unreasonable on these facts. Thomas thereafter pled no contest to the charged offense and was placed on probation. Thomas appeals.

## DISCUSSION

■ Thomas claims that, in searching his box without a warrant, the police violated his right to privacy and his Fourth Amendment right to be secure from unreasonable searches and seizures. More specifically, he contends the Fourth Amendment "protects people, not places" and that, therefore, the fact that his "shelter" was situated on a public sidewalk is "little more than a red herring." We disagree.

To invoke Fourth Amendment protection, Thomas must have both a subjective and an objectively reasonable expectation of privacy—an expectation that society is prepared to recognize as reasonable. (*Katz* v. *United States* (1967) 389 U.S. 347, 361 [19 L.Ed.2d 576, 587-588, 88 S.Ct. 507] (conc. opn. of Harlan, J.); *D'Aguanno* v. *Gallagher* (11th Cir. 1995) 50 F.3d 877, 880; *People* v. *Lovelace* (1981) 116 Cal.App.3d 541, 548 [172 Cal.Rptr. 65].) Although it is true, as Thomas contends, that the Fourth Amendment may protect a person's objectively reasonable expectation of privacy in a temporary or impermanent residence in a permissibly occupied area (*U.S.* v. *Gooch* (9th Cir. 1993) 6 F.3d 673, 678 [tent in public campground]; *LaDuke* v. *Nelson* (9th Cir. 1985) 762 F.2d 1318, 1331-1332 [migrant farm housing on private property]), that rule does not apply to a box illegally placed on a public sidewalk.

Where, as here, an individual "resides" in a temporary shelter on public property without a permit or permission and in violation of a law which expressly prohibits what he is doing, he does *not* have an objectively reasonable expectation of privacy. (*United States* v. *Ruckman* (10th Cir. 1986) 806 F.2d 1471, 1474 [rejecting a claim of privacy in a cave on federal property because the determination whether a place constitutes a person's "home" must take into account the means by which it was acquired and whether it is occupied without any legal right]; *Amezquita* v. *Hernandez-Colon* (1st Cir. 1975) 518 F.2d 8, 11-12 [no privacy right in a squatter's

892 P.2d 1145] (conc. opn. of Werdegar, J.) ["Clearly, *some* acts of camping in public places—pitching a tent in the middle of the street, for example—may constitutionally be punished"].)

community on public property]; *State* v. *Cleator* (1993) 71 Wn.App. 217 [857 P.2d 306, 308-309] [no privacy right in a tent on public property]; *State* v. *Mooney* (1991) 218 Conn. 85 [588 A.2d 145, 152, 154] [no privacy right in a squatter's "home" under a bridge abutment].) In short, a person who occupies a temporary shelter on public property without permission and in violation of an ordinance prohibiting sidewalk blockages is a trespasser subject to immediate ejectment and, therefore, a person without a reasonable expectation that his shelter will remain undisturbed. (*United States* v. *Ruckman, supra,* 806 F.2d at pp. 1472-1473; *Amezquita* v. *Hernandez-Colon, supra,* 518 F.2d at p. 11.)[2]

It is undisputed that Thomas's box was on the public sidewalk without the permission of the city, in violation of section 41.18 of the Municipal Code. For this reason, Thomas was subject to immediate ejectment (which, as he conceded, had occurred in the past) and the trial court's finding that Thomas had no objectively reasonable expectation of privacy was clearly correct. (*State* v. *Cleator, supra,* 857 P.2d at p. 308 [where there is no expectation of privacy, the police may enter on a hunch or for no good reason at all].)

We summarily reject Thomas's alternative contention that his box, if viewed as a "container," was entitled to Fourth Amendment protection. The box was not a "container" for Fourth Amendment purposes because it was not closed on all sides and because it was not an open or closed repository for personal effects either standing alone or located within something else. For these reasons, the cases on which Thomas relies are inapposite. (*State* v. *Mooney, supra,* 588 A.2d at pp. 152, 154 [finding privacy right in a duffel bag and a closed box containing personal items stored under a bridge but not in the under-the-bridge area where the bag and box were stored]; *New York* v. *Belton* (1981) 453 U.S. 454, 460-461, fn. 4 [69 L.Ed.2d 768, 774-775, 101 S.Ct. 2860]; *United States* v. *Chadwick* (1977) 433 U.S. 1, 3 [53 L.Ed.2d 538, 543, 97 S.Ct. 2476] [double-locked footlocker in trunk of automobile]; *Arkansas* v. *Sanders* (1979) 442 U.S. 753, 762-764 [61 L.Ed.2d 235, 243-245, 99 S.Ct. 2586] [closed suitcase in trunk of automobile]; *Robbins* v. *California* (1981) 453 U.S. 420, 422 [69 L.Ed.2d 744, 747-748, 101 S.Ct. 2841] [two wrapped packages inside a station wagon's luggage compartment]; *United States* v. *Cleary* (9th Cir. 1981) 656 F.2d 1302, 1303 [canvas bag in a van].)

---

[2]We emphasize that this case involves a search and seizure issue, not the enforcement of an ordinance which prohibits people from sleeping under bridges or in parks. (See *Tobe* v. *City of Santa Ana, supra,* 9 Cal.4th 1069.) Viewed from a practical perspective, it borders on the absurd to suggest the police should have to get a warrant before searching a transient's temporary shelter. By the time the warrant issued, the odds are the shelter would be long gone.

## Disposition

The judgment is affirmed.

Spencer, P. J., and Ortega, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 18, 1996. Mosk, J., was of the opinion that the petition should be granted.