OPINION OF THE COURT
Peter C. Buckley, J.
The defendant is charged with two counts of murder in the first degree (Penal Law § 125.27 [1] [a] [viii]) and two counts of murder in the second degree (Penal Law § 125.25 [1]) related to the bludgeoning deaths of George Santose and Steven Farnsworth, in the City of Elmira.
Defendant was initially arrested on January 14, 1998 for assaulting a hospital security guard. While in a holding cell at the police department, defendant confessed to having killed Farnsworth and Santose by repeatedly striking them in the head with a small sledge hammer as they slept. Police located the bodies and processed the crime scene. Investigators interviewed the defendant, who gave them the details of the crime. Defendant was a transient, who had lived in a homeless shelter, told police that he had been drinking at the victims’ apartment for several nights and stated he was sleeping on the railroad tracks.
In an effort to further tie defendant to the crime scene, Elmira Police Investigator Waters searched for a cable converter box missing from the victims’ apartment. He searched unsuccessfully in the area of Harper and Lake Streets where defendant had been reported buying a bag of snack food at a convenience store. Waters later consulted with a patrol officer who reportedly saw defendant coming down from the Lake Street railroad viaduct. Upon searching the viaduct, Waters located a freshly discarded snack bag which led him to a nearby abandoned stairwell, the missing cable box and prescription bottles bearing a victim’s name.
CONCLUSIONS OF LAW
Defendant argues that his 4th Amendment rights were violated by the warrantless search and seizure of items from what he terms to be his “home” — an abandoned railroad stairwell which led from Lake Street to a station and tracks located on a viaduct over the street. The rail line has long been abandoned with the street entrance to the stairwell walled over and the station and tracks removed. Conrail, which has a policy of removing trespassers, owns but does not maintain the property.
*96 The upper entrance to the stairwell was partially covered with brush, railroad timbers and tree branches, leaving an area 2.5 feet by 4 feet, over which there was no covering. Looking into this uncovered section, Investigator Waters could see in plain view a piece of plywood covering a portion of the stairs, the cable converter box, blankets and other items.
Entering the stairwell, Waters saw that the serial number on the cable converter box matched that which was assigned to George Santose by the cable company. Near the cable box was a knapsack. Looking in the open undisturbed knapsack Waters could see in plain view two prescription drug bottles having the name of Steven Farnsworth on them.
“The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” (US Const 4th Amend; NY Const, art I, § 12.) These Amendments establish the right of the People to be free from unreasonable search and seizure.
The right to be secure in your home is a sacred tradition which we have inherited from our English tradition. Lord Chatham speaking to Parliament expressed the right in this manner: “The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail — its roof may shake — the wind may blow through it — the storm may enter— the rain may enter — but the King of England cannot enter — all his force dares not cross the threshold of the ruined tenement!” (Commonwealth v Gordon, 546 Pa 65, 77, 683 A2d 253, 259 [Sup Ct Pa 1996] [Flaherty, J., dissenting].) While the right is held to be sacred in our legal tradition, it is not absolute. The freedom is freedom from unreasonable searches and seizures, not from any search or seizure. “While it has been often stated, the Fourth Amendment protects people, and not places [citing Katz v United States, 389 US 347 (1967)], any determination of just what protection is to be given requires, in a given case, some reference to a place.” (United States v Ruckman, 806 F2d 1471, 1473 [10th Cir 1986].)
The first point of inquiry is whether the defendant had a legitimate expectation of privacy in the stairwell — i.e., to establish his standing, which is a requisite for challenging the governmental action. (Alderman v United States, 394 US 165; Rakas v Illinois, 439 US 128; United States v Salvucci, 448 US 83; People v Ponder, 54 NY2d 160; People v Rodriguez, 69 NY2d 159.)
*97 “A legitimate expectation of privacy exists where defendant has manifested an expectation of privacy that society recognizes as reasonable * * * Thus, the test has two components. The first is a subjective component — did defendant exhibit an expectation of privacy in the place or item searched, that is, did he seek to preserve something as private * * * The second component is objective — does society generally recognize defendant’s expectation of privacy as reasonable, that is, is his expectation of privacy justifiable under the circumstances”. (People v Ramirez-Portoreal, 88 NY2d 99, 108 [1996] [citations omitted].)
In New York the issue of what constitutes a home was considered for Payton purposes in People v Herner (156 Misc 2d 735 [Sup Ct, Monroe County 1993], affd 212 AD2d 1042 [4th Dept 1995], lv denied 85 NY2d 974 [1995]). Police entered a garage detached from defendant’s parents’ home, awoke and arrested defendant. Defendant had been kicked out of the house due to his drug use. The parents initially had police remove him from the garage, but upon the onset of cold weather they ignored his presence. Defendant had a couch, a television, a space heater, dishes, ashtrays, bags of clothing and other items in the garage. The court found that the garage was never built for habitation and refused to extend the Payton protection from warrantless arrest to the garage. The Court in People v Ayers (214 AD2d 459 [1st Dept 1995], lv denied 86 NY2d 732 [1995]) decided that the defendant, who was arrested on drug charges, did not have a reasonable expectation of privacy in an abandoned apartment.
Courts in other States have considered the issue as follows.
In Commonwealth v Gordon (546 Pa 65, 683 A2d 253 [1996], supra), the court applied the two-pronged subjective and objective expectation test. Police had arrested defendant in and searched an abandoned building. There was a sheet separating the dining room occupied by defendant from the rest of the house and defendant had a mattress, television and electricity.
The court stated, “[particularly, a defendant must establish a possessory interest, a legitimate presence, or some ‘factor from which a reasonable and justifiable expectation of privacy could be deduced’ to prove that his subjective expectation of privacy is legitimate. [Citing Commonwealth v Peterson, 535 Pa 492, 636 A2d 615 (1993).]” (Commonwealth v Gordon, supra, 546 Pa, at 72, 683 A2d, at 257.) The court went on to state, “we held in Peterson that mere use of property, as exhibited by the presence of attributes of a home, is not a sufficient characteris *98 tic of ownership that would evidence a legitimate expectation of privacy protected by Article I, Section 8 [Pa Const].” (Commonwealth v Gordon, supra, 546 Pa, at 74, 683 A2d, at 258.)
In considering the circumstances of the case, the court found that the objective prong of the test had not been met. The court viewed the right to exclude others from the premises as a very important factor, found the sheet entrance to be little evidence of that right and found no other evidence of the right to exclude others.
In Commonwealth v Peterson (408 Pa Super 22, 596 A2d 172 [1991], affd 535 Pa 492, 636 A2d 615 [1993], supra) the court considered the expectation of an alleged drug dealer in a “gate house” (fortified turnstile drug sale point) contained in an abandoned storefront. The location had a sofa, a makeshift bed and a bucket which was used as a chamber pot. The court noted that the defendant’s only relationship to the location was as a temporary drug dispersal depot and found that defendant lacked any legitimate objective expectation of privacy.
The defendant in State v Cleator (71 Wash App 217, 857 P2d 306 [1993], appeal denied 123 Wash 2d 1024, 875 P2d 635 [1994]) had erected a tent in woods owned by the State. From the location he and an accomplice went out to snatch purses. The tent had a zipped opening and a zipped mosquito netting beyond that.
The court stated, “Lance Cleator and Kahere Sidiq wrongfully occupied public land by living in a tent erected on public property. The public property was not a campsite, and it is undisputed that neither Cleator nor Sidiq had permission to erect a tent in that location. Under these circumstances, he could not reasonably expect that the tent would remain undisturbed. As a wrongful occupant of public land, Cleator had no reasonable expectation of privacy at the campsite because he had no right to remain on the property and could have been ejected at any time.” (State v Cleator, supra, 71 Wash App, at 222, 857 P2d, at 308-309.)
Despite finding that the defendant had no expectation of privacy in the tent, the court found that the defendant had a limited expectation of privacy in personal items contained in the tent. However, such items were found admissible as they were in plain view.
The Connecticut Supreme Court in State v Mooney (218 Conn 85, 588 A2d 145 [1991], cert denied 502 US 919 [1991]) considered the defendant’s expectation of privacy in the area *99 under a bridge abutment. They found he had no legitimate expectation of privacy in the area but did have such an expectation regarding closed containers secreted in the bridgeworks.
In United States v Ruckman (supra) the court found that an individual did not have a reasonable expectation of privacy in a cave from which he could be ejected at any time.
Amezquita v Hernandez-Colon (518 F2d 8 [1st Cir 1975], cert denied sub nom. Amezquita v Colon, 424 US 916 [1976]) held that a squatter had no reasonable expectation of privacy.
In the case at bar, defendant was a transient, staying in several different locations. He lived at the local homeless shelter, Second Place East, until his conduct was questioned, at which time he left that location. It is not clear whether he might have returned there absent his legal problems. According to his statements to police, defendant stayed at the Santose apartment drinking with Santose and Farnsworth for several nights. Some of his personal items were found in the abandoned railway stairwell. The maintenance of these items in the stairwell and the fact that the defendant partially covered the entrance to the stairwell may have evidenced the defendant’s subjective expectation of privacy in the location. However, defendant did not indicate to police that he maintained a residence on the railroad tracks or identify the particular location, but only said he was sleeping on the tracks. There is no indication whether he maintained the bulk of his personal items there and no indication regarding defendant’s exclusion of others from the premises. While it is logical to consider these factors to determine defendant’s subjective expectation of privacy in the location, it is not apparent that defendant viewed his situation in this light. The defendant appears to have been living from drink to drink with little concern for his personal physical welfare, let alone any consideration of personal property or personal privacy. His partial covering of the stairwell was undoubtedly done more to keep out some of the elements than to provide privacy. At best, the evidence shows some subjective expectation of privacy in that some of defendant’s personal belongings were located in the stairwell.
The court next considers the objective expectation of privacy to determine whether society was willing to consider such an expectation of privacy as reasonable. The defendant was clearly a trespasser or squatter on the premises, which are owned by the Conrail system. He was subject to ejectment as a trespasser would have been ejected if Conrail had learned of his presence. *100 The court in Amezquita v Hernandez-Colon (supra) sought to determine the expectation of squatters on Federal lands. The court stated, “whether a place constitutes a person’s ‘home’ for this purpose cannot be decided without any attention to its location or the means by which it was acquired; that is, whether the occupancy and construction were in bad faith is highly relevant. Where the plaintiffs had no legal right to occupy the land and build structures on it, those faits accomplis could give rise to no reasonable expectation of privacy even if the plaintiffs did own the resulting structures.” (Supra, at 12.)
There was no indication of defendant’s ownership or any claim to ownership or a right to possess the location. Defendant did not possess the premises and claim the same openly. There was no door to the premises, no indication to the world that this was a residence, no services or utilities whatsoever, and no furnishings in the location (except a piece of plywood and blankets if those might be considered as furnishings). The location was never built for habitation as a residence and was not outfitted as such in the normal sense of the term. The court in Commonwealth v Peterson (408 Pa Super 22, 596 A2d 172, affd 535 Pa 492, 636 A2d 615, supra) considered the use of a chamber pot as an indication that the premises were not habitable as a residence. There is no indication that the stairwell even had a chamber pot. The court in United States v Ruckman (806 F2d 1471, supra) considered whether a natural cave could be considered a “home”. The defendant therein had attempted to cover the cave entrance and made what defense referred to as a “door”. The court rejected the defendant’s argument noting that the cave did not give notice of its occupancy as would a house or business and could not be considered to enjoy the same privileges. The court also noted that the defendant was a squatter on Federal land. The entrance to the stairwell in the present case did not protect the contents of the stairwell from the gaze or entry of anyone who happened upon the location. The only way in which the defendant would have been able to limit access to the premises was for him to remain physically there at all times.
Considering the totality of circumstances, the court finds that the defendant did not have an objectively reasonable expectation of privacy in the railway stairwell. Absent such objective expectation of privacy he has no standing to challenge the search of the premises.
While defendant had no expectation of privacy in the location, he may still have an expectation of privacy in the
*101 personal effects found in the stairwell. (See, State v Cleator, 71 Wash App 217, 857 P2d 306, supra; State v Mooney, 218 Conn 85, 588 A2d 145, supra.) The testimony of Investigator Waters was that he could see the cable box from the entrance to the stairwell and that he could see the serial number on the box once he entered the stairwell. Further, defendant’s knapsack was open and the prescription bottles could be seen without disturbing the knapsack. The defendant made no effort to secrete these items or to place them in closed and/or secured containers. The court finds that the defendant did not have a reasonable expectation of privacy in the items seized from the stairwell. We further find that the items were in plain view and the cable box and the prescription bottles were obviously evidence regarding the murder investigation upon their being viewed by Waters. Seizure of these items was proper. (See, State v Cleator, supra; Horton v California, 496 US 128; compare, People v Diaz, 81 NY2d 106 [1993], with Minnesota v Dickerson, 508 US 366 [1993] [Court of Appeals set forth plain view requirements but rejected plain touch exception. United States Supreme Court recognized plain touch exception under Federal Constitution. Cited for plain view requirements only].)
Based upon the findings of fact and conclusions of law and upon the beyond a reasonable doubt standard, the defendant’s motion to suppress is denied.