[No. A129724. First Dist., Div. One. July 13, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES BYON NISHI, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION**[*]**]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II., IV., V., and VI.

956

**COUNSEL**

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DONDERO, J.**—Defendant Charles Byon Nishi was convicted following a jury trial of one count of attempting to deter or resist an executive officer in the performance of duty in violation of Penal Code section 69.[1] In this appeal he challenges the denial of his pretrial motion to suppress evidence, and complains that he was denied the right to testify at trial. He also argues that the conviction is not supported by the evidence, and objects to the imposition of a probation condition that directs him to undergo a psychological evaluation and take medication as directed by a physician. In a supplemental brief, defendant claims instructional error and improper denial of his motion for

---

[1] All further statutory references are to the Penal Code unless otherwise indicated. Defendant was acquitted by the jury of additional counts of making criminal threats. (§ 422.)

self-representation. We conclude that defendant had no reasonable expectation of privacy in the area searched, and was not denied the right to testify at trial. The evidence supports the conviction and defendant's motion for self-representation was untimely. No instructional error occurred. The medication condition of probation is both reasonably related to deterring future criminality, and neither vague nor overbroad. We therefore affirm the judgment.

## STATEMENT OF FACTS

The United States Air Force Freedom of Information and Privacy Act Office of the Department of Defense received an e-mail signed by Charles Nishi, who referred to himself as "The Shepherd," dated March 27, 2010, which was designated as an "EMERGENCY COMMUNICATION." In the e-mail Nishi stated he had been located after numerous California Highway Patrol helicopter flights, and complained that California's Department of Fish and Game had been repeatedly and unlawfully shooting at protected mountain lions in the "Open Space" to "PROVOKE AN ATTACK which endangers the public." Nishi petitioned for an immediate "shut down" of "Marin County Sheriffs and Fish & Games operations," and asked the United States Fish and Wildlife Service and the Department of Justice to "take control of all wild life activities" in the Marin County Indian Valley Open Space Preserve to prevent further slaughter of mountain lions. He also declared: "I am armed and will now fire on all Sheriff and Fish & Game after this email so either shut them down or put some boots on the ground to join the battle, remember that if they kill me what is going to happen to the human race by APOLLO or the same beings on Codex Dresden." Defendant further pointed out he had informed California's Department of Fish and Game that the United States Air Force was "monitoring their activities" through air support.

The Department of Defense forwarded the e-mail to the Marin County Sheriff's Department on March 29, 2010. Deputy Sheriff Christopher Henderson, an officer who had often investigated cases of "criminal threats" to law enforcement, was given the e-mail with directions to "take care of it." Deputy Henderson reviewed the e-mail and was alarmed by its nature, detail, length and content. He decided the message represented a "credible threat" and "safety issue," so he issued a computer-generated "Officer Safety/Welfare Check" bulletin, which he sent to regional law enforcement agencies, including the Department of Fish and Game. In the bulletin the deputy identified defendant Charles Nishi of Novato as the author of an angry, confrontational e-mail sent to military officials, and included a description and photograph of him. The bulletin also mentioned a warning from defendant in the e-mail that he "is armed and will 'fire on' Sheriff and Fish and Game personnel if confronted." Deputy Henderson's primary objective in issuing the bulletin was to effectuate a medical evaluation of defendant.

Brian Sanford, superintendant in charge of operations for the Indian Valley Open Space Preserve, received the e-mail and Deputy Henderson's bulletin. As a result, he posted the e-mail and directed his staff "not to go into that preserve" until contact was made with defendant. Charles Armor, regional manager for the Bay Delta region of California's Department of Fish and Game, became concerned for the safety of his staff after learning of the contents of defendant's e-mail. He advised his staff "not to wear their uniforms," and be "a little more vigilant" while working in the field.

Marin County Deputy Sheriff Brenndon Bosse, who has patrol responsibilities in the Indian Valley Open Space Preserve, also received defendant's e-mail and the associated bulletin from Deputy Henderson. He was delegated the duty to proceed to the Indian Valley Open Space Preserve to contact defendant. Deputy Bosse was acquainted with defendant due to prior contacts: his prior infractions in 2009 for camping in the preserve without a permit, and unsubstantiated reports made by defendant of the shooting of mountain lions. Defendant had been cooperative and nonthreatening with Deputy Bosse in the past. Nevertheless, "because of the threatening statement" in the e-mail that he "would fire upon Sheriff's deputies or Fish and Game officers," Bosse stayed near cover as he hiked in the preserve searching for defendant.

About 6:00 p.m. on March 31, 2010, Deputy Bosse located defendant at a fire road in the Indian Valley Open Space Preserve. Defendant affirmed he sent the e-mail, but did not acknowledge he wrote the paragraph that threatened to "fire upon Sheriff's deputies or Fish and Game officers." Defendant consented to a search for weapons, and exclaimed that the e-mail "worked" by keeping the officers "off the preserve." He was then arrested and transported to the psychiatric facility at Marin General Hospital. During a subsequent search of defendant's campsite Bosse discovered boxes of new shotgun shells under a tarp next to a tent, although no firearm was found.

## DISCUSSION

### I. *The Denial of the Motion to Suppress Evidence.*

Defendant complains of the warrantless search of his campsite, and specifically the seizure of the boxes of shotgun shells from a tarp "immediately surrounding" his tent. Defendant argues that his "expectation of privacy in the campsite was subjectively as well as objectively reasonable, given his homeless status and the presumed willingness of society to recognize an expectation of privacy for a homeless camper on secluded public land." Defendant's position is that the tarp was within the "curtilage" of his campsite, and thus "entitled to Fourth Amendment protections." The Attorney

General responds that defendant "had no reasonable expectation of privacy in the location where the ammunition was found," so no Fourth Amendment violation occurred as a result of the warrantless search.

In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence. (*People v. Alvarez* (1996) 14 Cal.4th 155, 182 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *People v. Miranda* (1993) 17 Cal.App.4th 917, 922 [21 Cal.Rptr.2d 785].) We independently review the trial court's application of the law to the facts. (*People v. Alvarez, supra,* at p. 182.)

■ The threshold issue before us is " 'whether the challenged action by the officer "has infringed an interest of the defendant which the Fourth Amendment was designed to protect." [Citations.] . . .' [Citations.]" (*People v. Shepherd* (1994) 23 Cal.App.4th 825, 828 [28 Cal.Rptr.2d 458].) " 'An illegal search or seizure violates the federal constitutional rights only of those who have a legitimate expectation of privacy in the invaded place or seized thing. [Citation.] The legitimate expectation of privacy must exist in the particular area searched or thing seized in order to bring a Fourth Amendment challenge.' [Citation.]" (*People v. McPeters* (1992) 2 Cal.4th 1148, 1171 [9 Cal.Rptr.2d 834, 832 P.2d 146], italics omitted; see *People v. Jenkins* (2000) 22 Cal.4th 900, 971 [95 Cal.Rptr.2d 377, 997 P.2d 1044]; *People v. Roybal* (1998) 19 Cal.4th 481, 507 [79 Cal.Rptr.2d 487, 966 P.2d 521].)

"A defendant has the burden at trial of establishing a legitimate expectation of privacy in the place searched or the thing seized." (*People v. Jenkins, supra,* 22 Cal.4th 900, 972.) "A person seeking to invoke the protection of the Fourth Amendment must demonstrate both that he harbored a subjective expectation of privacy and that the expectation was objectively reasonable. [Citation.] An objectively reasonable expectation of privacy is 'one society is willing to recognize as reasonable.' [Citation.] Stated differently, it is an expectation that has ' " 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.' " ' [Citation.]" (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1068 [85 Cal.Rptr.3d 890] (*Hughston*); see *Smith v. Maryland* (1979) 442 U.S. 735, 740 [61 L.Ed.2d 220, 99 S.Ct. 2577]; *U.S. v. Dodds* (10th Cir. 1991) 946 F.2d 726, 728 (*Dodds*).)

■ " 'A "reasonable" expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms. [Citation.]' [Citation.]" (*Rains v. Belshé* (1995) 32 Cal.App.4th 157, 173 [38 Cal.Rptr.2d 185].) "There is no set formula for determining whether a person has a reasonable expectation of privacy in the place searched, but the totality of the

circumstances are considered. [Citation.] Among the factors sometimes considered in making the determination are whether the defendant has a possessory interest in the thing seized or place searched [citation], 'whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion; whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.' [Citation.]" (*In re Rudy F.* (2004) 117 Cal.App.4th 1124, 1132 [12 Cal.Rptr.3d 483].)

The most significant, and ultimately controlling, factor in the case before us is that defendant was not lawfully or legitimately on the premises where the search was conducted. The uncontradicted evidence reveals that camping on the Indian Valley Open Space Preserve was prohibited without a permit. Defendant had no authorization to camp within or otherwise occupy the public land. On at least four or five recent occasions he had been cited by officers for "illegal camping" and evicted from other campsites in the preserve.

Thus, both the illegality, and defendant's awareness that he was illicitly occupying the premises without consent or permission, are undisputed. "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." (*Rakas v. Illinois* (1978) 439 U.S. 128, 143, fn. 12 [58 L.Ed.2d 387, 99 S.Ct. 421].) Defendant was not in a position to legitimately consider the campsite—or the belongings kept there—as a place society recognized as private to him. (*Dodds, supra*, 946 F.2d 726, 728–729.) Nor did he have the right to exclude others from that place. He had no ownership, lawful possession, or lawful control of the premises searched. (See *U.S. v. Gale* (D.C. Cir. 1998) 329 U.S. App.D.C. 49 [136 F.3d 192, 195–196]; *U.S. v. Carr* (10th Cir. 1991) 939 F.2d 1442, 1446.) A "person can have no reasonable expectation of privacy in premises on which they are wrongfully present . . . ." (*U.S. v. Gutierrez-Casada* (D.Kan. 2008) 553 F.Supp.2d 1259, 1270; see *U.S. v. McRae* (6th Cir. 1998) 156 F.3d 708, 711; *Dodds, supra*, at pp. 728–729.)

Defendant's unlawful temporary occupation of the campsite distinguishes the present case from *U.S. v. Gooch* (9th Cir. 1993) 6 F.3d 673, 676–677, in which the court concluded that the defendant had an objectively reasonable expectation of privacy in a tent pitched for several days in a public campground where he was "legally permitted to camp." (*Id.* at p. 677; see *U.S. v. Basher* (9th Cir. 2011) 629 F.3d 1161, 1167–1168.) In *U.S. v. Sandoval* (9th Cir. 2000) 200 F.3d 659, 660–661 (*Sandoval*), the court extended the holding in *Gooch* to find a legitimate expectation of privacy associated with the seizure of a medicine bottle discovered during a search of a "makeshift

tent" "located on Bureau of Land Management" property (*id.* at p. 660), where it was "unclear whether Sandoval had permission to be there." (*Id.* at p. 661.) The defendant's tent in *Sandoval* was located in an area that was heavily covered by vegetation and virtually impenetrable. In addition, the tent was closed on all four sides, and the medicine bottle was not visible from outside. (*Id.* at p. 660.) The court in *Sandoval* concluded: "[W]e do not believe the reasonableness of Sandoval's expectation of privacy turns on whether he had permission to camp on public land. Such a distinction would mean that a camper who overstayed his permit in a public campground would lose his Fourth Amendment rights, while his neighbor, whose permit had not expired, would retain those rights." (*Id.* at p. 661, fn. omitted.)

Similarly, in *Hughston, supra,* 168 Cal.App.4th 1062, 1068–1069, 1071, the defendant was found to have "a reasonable expectation of privacy" for Fourth Amendment purposes in an aluminum frame covered with tarps that was erected within a designated site on land specifically set aside for camping during a music festival. The court in *Hughston* declared: " 'One should be free to depart the campsite for the day's adventure without fear of this expectation of privacy being violated.' " (*Hughston,* at p. 1070, quoting *People v. Schafer* (Colo. 1997) 946 P.2d 938, 944.)

■ Here, in contrast to *Sandoval* and *Hughston,* not only was defendant clearly camped in a prohibited location, the shotgun shells were seized from *outside* his tent, in a pile of debris under a loose tarp. While a tent located in a public campground may be considered a private area where people sleep and keep valuables, functionally somewhat comparable to a house, apartment, or hotel room, the remainder of defendant's unauthorized, undeveloped campsite was a dispersed, ill-defined site, exposed and open to public view. The area around the tent was not within a defined residential curtilage in which defendant had a reasonable expectation of privacy. (*U.S. v. Basher, supra,* 629 F.3d 1161, 1169.) Also, after his repeated removal by officers from campsites he had occupied in the same preserve in the recent past, defendant was conscious of the illegality, which further tends to negate his legitimate expectation of privacy in that location. (*People v. Thomas* (1995) 38 Cal.App.4th 1331, 1333–1334 [45 Cal.Rptr.2d 610] (*Thomas*).)

We find the decision in *U.S. v. Ruckman* (10th Cir. 1986) 806 F.2d 1471, persuasive in the present case. In *Ruckman,* the defendant lived in a natural cave located in a remote area of southern Utah on land owned by the United States and controlled by the Bureau of Land Management. He attempted to enclose the cave by "fashioning a crude entrance wall from boards and other materials which surrounded a so-called 'door.' " (*Id.* at p. 1472.) A warrantless search of the cave resulted in seizure of firearms and "anti-personnel booby traps." (*Ibid.*) As in the case before us, the evidence established that

"Ruckman was admittedly a trespasser on federal lands and subject to immediate ejectment" (*ibid.*) by authorities "at any time" (*id.* at p. 1473). The court pointed out that " 'whether the occupancy and construction were in bad faith,' " and the " 'legal right to occupy the land and build structures on it,' " were factors " 'highly relevant' " to the issue of the defendant's expectation of privacy. (*Id.* at p. 1474, quoting *Amezquita v. Hernandez-Colon* (1st Cir. 1975) 518 F.2d 8, 12.) The court determined "that Ruckman's cave is not subject to the protection of the Fourth Amendment." (*Ruckman, supra,* at p. 1472.)

Here, as in *Ruckman*, defendant was a trespasser on public land, and occupied the campsite without authority in bad faith. "Where, as here, an individual 'resides' in a temporary shelter on public property without a permit or permission and in violation of a law which expressly prohibits what he is doing, he does *not* have an objectively reasonable expectation of privacy. (*U.S. v. Ruckman*[, *supra,*] 806 F.2d 1471, 1474 [rejecting a claim of privacy in a cave on federal property because the determination whether a place constitutes a person's 'home' must take into account the means by which it was acquired and whether it is occupied without any legal right]; *Amezquita v. Hernandez-Colon*[, *supra,*] 518 F.2d 8, 11–12 [no privacy right in a squatter's community on public property]; *State v. Cleator* (1993) 71 Wn.App. 217 [857 P.2d 306, 308–309] [no privacy right in a tent on public property]; *State v. Mooney* (1991) 218 Conn. 85 [588 A.2d 145, 152, 154] [no privacy right in a squatter's 'home' under a bridge abutment].)" (*Thomas, supra,* 38 Cal.App.4th 1331, 1334–1335.)[2] We therefore conclude that the warrantless search of defendant's campsite did not violate the Fourth Amendment.

II. *The Failure of the Trial Court to Advise Defendant of his Right to Testify.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *The Evidence to Support the Conviction of a Violation of Section 69.*

Next, defendant maintains that his conviction of a violation of section 69 is not supported by the evidence. Defendant contends that his e-mail neither "directly threatened the sheriff or Fish & Game department," nor "showed any intent that the federal government convey" his threat to those officers. He also argues that his "threat did not have as its requisite purpose the deterrence of local officials from performing their duties," but rather was "intended to

---

[2] *Thomas* held that a homeless man living in a cardboard box on a public sidewalk, in violation of a law expressly prohibiting him from doing so, did not have a reasonable expectation of privacy in the box. (*Thomas, supra,* 38 Cal.App.4th 1331, 1333–1335.)

[*]See footnote, *ante,* page 954.

convince the federal agencies" to intervene to halt actions defendant considered unlawful—that is, the unauthorized shooting of mountain lions.

## A. *The Standard of Review.*

We first consider the nature of our review of the evidence. Defendant requests that we "employ [an] independent review standard," due to the "plausible First Amendment defense to [the] charge."

"In *Bose Corp. v. Consumers Union of U. S., Inc.* (1984) 466 U. S. 485, 499 [80 L.Ed.2d 502, 104 S.Ct. 1949], the United States Supreme Court explained that 'in cases raising First Amendment issues . . . an appellate court has an obligation to "make an independent examination of the whole record" in order to make sure that "the judgment does not constitute a forbidden intrusion on the field of free expression." ' [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 36 [82 Cal.Rptr.3d 323, 190 P.3d 664].) "[W]hen the appellate issue is whether a particular communication falls outside the protection of the First Amendment, independent review is called for, 'both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.' [Citation.]" (*Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1161 [72 Cal.Rptr.3d 231] (*Krinsky*).) "Relying on *Bose*," the California Supreme Court "held in *In re George T.* [(2004) 33 Cal.4th 620, [16 Cal.Rptr.3d 61, 93 P.3d 1007]], that when a plausible First Amendment defense is raised, a reviewing court should independently review the entire record in determining the sufficiency of evidence supporting a juvenile court's finding that the minor made a criminal threat within the meaning of section 422." (*Lindberg, supra*, at p. 37.) The court "explained that independent review of the constitutionally relevant facts is necessary in cases involving First Amendment issues 'to ensure that a speaker's free speech rights have not been infringed by a trier of fact's determination that the communication at issue constitutes a criminal threat.' ([*In re George T., supra*,] at p. 632.) Independent review is employed 'precisely to make certain that what the government characterizes as speech falling within an unprotected class actually does so.' [Citation.]" (*Ibid.*)

"Thus, when called upon to draw ' "the line between speech unconditionally guaranteed and speech [that] may legitimately be regulated," ' 'we "examine for ourselves the statements in issue and the circumstances under which they were made to see . . . whether they are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect." ' [Citations.]" (*Krinsky, supra*, 159 Cal.App.4th 1154, 1161–1162.) " 'Independent review is not the equivalent of

de novo review "in which a reviewing court makes an original appraisal of all the evidence to decide whether or not it believes" the outcome should have been different. [Citation.] Because the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review, nor are findings of fact that are not relevant to the First Amendment issue . . . .' [Citation.]" (*People v. Lindberg, supra,* 45 Cal.4th 1, 36.) "[T]o the limited extent that the court below resolved evidentiary disputes, made credibility determinations, or made findings of fact that are not relevant to the First Amendment issue, we uphold those rulings if they are supported by substantial evidence." (*Krinsky, supra,* at p. 1162, citing *In re George T., supra,* 33 Cal.4th 620, 634.)

■ Here, the charge of a violation of section 69 focused on defendant's proclamation that he was "armed and will now fire on all Sheriff and Fish & Game after this email." The direct threat of violence to fish and game or sheriff's department officials who entered the Marin County Indian Valley Open Space Preserve was not protected speech under the First Amendment. (*People v. Monterroso* (2004) 34 Cal.4th 743, 776 [22 Cal.Rptr.3d 1, 101 P.3d 956].) "[T]rue threats are not constitutionally protected." (*People v. Dunkle* (2005) 36 Cal.4th 861, 919 [32 Cal.Rptr.3d 23, 116 P.3d 494].) As the California Supreme Court explained in *People v. Toledo* (2001) 26 Cal.4th 221, 233 [109 Cal.Rptr.2d 315, 26 P.3d 1051], "penalizing speech does not offend First Amendment principles as long as, ' "the relevant statute singles out for punishment threats falling outside the scope of First Amendment protection." ' [Citations.]" (*People v. Jackson* (2009) 178 Cal.App.4th 590, 598 [100 Cal.Rptr.3d 539].) " ' "[T]he state may penalize threats, even those consisting of pure speech, provided the relevant statute singles out for punishment threats falling outside the scope of First Amendment protection. [Citations.] In this context, the goal of the First Amendment is to protect expression that engages in some fashion in public dialogue, that is, ' "com-munication in which the participants seek to persuade, or are persuaded; communication which is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs . . . ." ' [Citations.]" . . . A statute that is otherwise valid, and is not aimed at protected expression, does not conflict with the First Amendment simply because the statute can be violated by the use of spoken words or other expressive activity. [Citation.]' [Citation.]" (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 536–537 [118 Cal.Rptr.3d 420].)

" ' "When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection." ' [Citations.]" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 804 [112 Cal.Rptr.3d 542].) Further, " ' "As long as the threat reasonably appears to be a serious expression of intention to inflict bodily harm [citation] and its

circumstances are such that there is a reasonable tendency to produce in the victim a fear that the threat will be carried out," a statute proscribing such threats "is not unconstitutional for lacking a requirement of immediacy or imminence." ' [Citations.]" (*People v. Monterroso, supra*, 34 Cal.4th 743, 776.)

Therefore, "defendant has not raised any First Amendment arguments, and an independent standard of review is not applicable. When the First Amendment is not implicated, defendant's sufficiency of the evidence challenge is evaluated under the substantial evidence test. [Citations.] 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Wilson, supra*, 186 Cal.App.4th 789, 805.) The standard is " 'whether any rational trier of fact could find the legal elements [of section 69] satisfied beyond a reasonable doubt . . . .' [Citation.]" (*People v. Lindberg, supra*, 45 Cal.4th 1, 36–37.)

B. *The Evidence That Supports the Conviction of a Violation of Section 69.*

█ Former section 69, under which defendant was charged and convicted, stated, "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment." (Stats. 1983, ch. 1092, § 232, p. 4022.) "The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814 [66 Cal.Rptr.2d 701, 941 P.2d 880].) The first form of a violation of section 69 "encompasses attempts to deter either an officer's immediate performance of a duty imposed by law or the officer's performance of such a duty at some time in the future." (*In re Manuel G., supra*, at p. 817, italics omitted.) The second form of violating section 69 "assumes that the officer is engaged in such duty when resistance is offered," and "the officers must have been acting lawfully when the defendant resisted arrest." (*In re Manuel G., supra*, at p. 816.)

■ The case against defendant proceeded exclusively on the first form of a violation of section 69, which has "been called ' "attempting to deter" ' " (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 984 [77 Cal.Rptr.3d 912]), and is "established by ' "[a] threat, unaccompanied by any physical force" ' and may involve either an officer's immediate or future performance of his duty. [Citation.]" (*Id.* at p. 985.) To avoid infringement on protected First Amendment speech, "the term 'threat' has been limited to mean a threat of unlawful violence used in an attempt to deter the officer. [Citations.] The central requirement of the first type of offense under section 69 is an attempt to deter an executive officer from performing his or her duties imposed by law; unlawful violence, or a threat of unlawful violence, is merely the means by which the attempt is made." (*In re Manuel G., supra,* 16 Cal.4th 805, 814–815; see *People v. Superior Court (Anderson)* (1984) 151 Cal.App.3d 893, 896–897 [199 Cal.Rptr. 150].) "[A] violation of section 69 requires a specific intent to interfere with the executive officer's performance of his duties . . . ." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1153 [124 Cal.Rptr.2d 373, 52 P.3d 572]; see *People v. Patino* (1979) 95 Cal.App.3d 11, 27 [156 Cal.Rptr. 815].)

■ We find substantial evidence in the record to support the conviction. While defendant submits that the purpose of his e-mail was merely to dissuade the Fish and Game and sheriff's departments from continuing to proceed with a program of unlawfully eradicating mountain lions or "his cats," either directly or through the assistance of federal authorities, the evidence also convincingly demonstrates an intent to deter officials from patrolling or otherwise performing duties in the Indian Valley Open Space Preserve by threatening to "fire on" them if they appeared there. Attempts to deter either an officer's immediate performance of a duty or the performance of such a duty at some time in the future constitute a violation of the statute. (*In re Manuel G., supra,* 16 Cal.4th 805, 817.) Defendant essentially acknowledged as much when he was encountered by Deputy Bosse, and remarked that the e-mail "worked" by keeping the officers "off the preserve." Moreover, the message had the contemplated effect. The superintendant in charge of operations for the Indian Valley Open Space Preserve directed his staff "not to go into that preserve" until contact was made with defendant. The regional manager for the Bay Delta region of the Department of Fish and Game advised his staff "not to wear their uniforms," and be "a little more vigilant when they're working in the fields." Deputy Bosse testified that in light of the e-mail, he patrolled with greater care during his search for defendant.

That the e-mail was not separately or directly sent to the intended victims fails to negate proof of either an attempt to deter or prevent an officer from performing a duty or the requisite specific intent to interfere with the executive officer's performance of duties. The statute does not require that a threat be personally communicated to the victim by the person who makes

the threat. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 861 [123 Cal.Rptr.2d 193]; *In re David L.* (1991) 234 Cal.App.3d 1655, 1659 [286 Cal.Rptr. 398].) The inference may be drawn from the evidence that defendant intended, and expected or at least foresaw, a message with an unequivocal threat to shoot Fish and Game and sheriff's department officers would be conveyed from the Department of Defense to the intended law enforcement targets of the threat. (*People v. Hamilton* (2009) 45 Cal.4th 863, 936 [89 Cal.Rptr.3d 286, 200 P.3d 898].) Section 69 also does not require a showing that defendant had the present ability to carry out the threats; evidence that the letter contained the threats was sufficient to support a finding that defendant violated section 69. (*Hamilton, supra,* at p. 936; *People v. Hines* (1997) 15 Cal.4th 997, 1060 [64 Cal.Rptr.2d 594, 938 P.2d 388].) We conclude that the elements of a violation of section 69 are established by substantial evidence.

IV.–VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Accordingly, the judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 17, 2012, S204866.

---

*See footnote, *ante,* page 954.