Filed 9/16/16  P. v. Perrette CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JEREMY JOEL PERRETTE,<br><br>    Defendant and Appellant. | F069655<br><br>(Super. Ct. No. BF152842A)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephanie A. Mitchell and Daniel B. Bernstein, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Kane, Acting P.J., Detjen, J. and Franson, J.

Appellant Jeremy Joel Perrette appeals following his convictions by plea of no contest for three counts of being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)/counts 1-3), one count of resisting arrest (Pen. Code, § 148, subd. (a)(1)/count 6), and one count of using threats to obstruct an executive officer in the performance of their duties (Pen. Code, § 69, count 7). Specifically, appellant contends his no contest plea to count 7 lacked a sufficient factual basis and that the restitution fines imposed following his conviction violated due process. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On March 26, 2014, an amended complaint was filed containing nine criminal counts asserted against appellant. In addition to the five charges noted in the introduction, each of which, save count 6, also carried as an enhancement an allegation they were carried out for the benefit of a criminal street gang under Penal Code section 186.22, appellant was charged with carrying a loaded firearm as a member of a criminal street gang (Pen. Code, § 25850, subd. (c)(3)/count 4), threatening a public officer (Pen. Code, § 71/count 5), selling or offering to sell tear gas (Pen. Code, § 22900/count 8), and being a felon in possession of ammunition (Pen. Code, § 30305, subd. (a)(1)/count 9).

That same day, the trial court began appellant's preliminary hearing. Testimony provided at that hearing from Bakersfield Police Officers Sean Underhill and Ryan Vaughan detailed the facts leading to appellant's charges.

On December 18, 2013, Officer Underhill arrived at an address on Tierra Verde Street in Bakersfield, to conduct a probation search of appellant. Evidence collected from Facebook posts suggested appellant was in possession of several firearms, some of which were kept in a backpack with a United States Armed Forces logo on it. Contact

---

[1] As the issues raised in this appeal are primarily focused on count 7, our recitation of the facts have been similarly narrowed.

was made with appellant, but he initially refused to open the door.  Appellant ultimately relented, opening the door after Officer Underhill began attempting to kick it open.  As the police entered the building, they ordered appellant to lay down on the ground.  Instead, appellant began retreating toward a couch on which the backpack with the United States Armed Forces logo was located.  As a result, appellant was subdued by Taser and placed in handcuffs.  A subsequent search resulted in the seizure of two cellular phones.  A further search of those phones revealed several images of appellant in possession of loaded firearms and ammunition.

 Following the probation search, Officer Vaughan continued to monitor appellant's Facebook postings.  In doing so, Officer Vaughan identified several Facebook posts which he considered concerning.  Officer Underhill testified to seeing each of the postings reviewed by Officer Vaughan and found that "they began to get into a threatening manner."  Three of those posts are recounted below.

On December 21, 2013, appellant allegedly posted the following two Facebook comments, both of which we recount with the punctuation and spelling identified as being used in the original posts:

> "[M]ouies hot right now abrah licon the vampire hunter, jango, now u see me.  varrio tales.  the purge i thought o.k.  snoop dogg unrecarnated snoop lion he goes to a jamican island and blows must see .b.m.f docunmentry.  but hey peps shit blowing on that sherbert.  to da pigz that tried to pin strapez on me tell uz we know.  now the way i move ask some folks they tore my house my room u hoez b.p.d. killa and i dont keep dirt where my head lays qutoe big meech.  free b.m.f."

> "Good morning pigz im sue the fucc after 15 years u pigz my lawyer like rodney king theme pigz waz found inacent in state but found guilty in fedaral court 40 years pigz 4 beating that man ha l.a.p.d. r.i.p. to rodney king u copz jump the gun do youre home work you're - - u underhill ur getting sued but any ways rolling this girl scout god dam my bloc smell that pigz."

3

Officer Vaughan, who testified to having extensive gang experience and prior certifications as a gang expert, explained that the combination of the reference to pigs, a common derogatory term for law enforcement, and straps, a common street slang for firearms, showed the first post included a statement to the officers that searched appellant's home. The phrase "i dont keep dirt where my head lays" indicated there were no firearms at the residence, while the phrase "b.p.d. killa" was a "threat against law enforcement" which stood for "Bakersfield Police Department killer." Officer Vaughan also noted that the second post, made the same day as the "b.p.d. killa" post, specifically named Officer Underhill.

Later, on January 18, 2014, appellant posted the following:

> "Immm cacc … pigz fedz ur a joke edward jaglez gay ass faget fucc the d.a. and officer eddy … lol underhill u crokked pig but c sidez that that dollar thank you obama."

Officer Vaughan explained the misspelled words were consistent with spellings intentionally used by Crips gang members. He further explained that the reference to "officer eddy" was significant because Officer Eddy was a Bakersfield police officer who was wounded in a shootout that killed a notable gang member named Leon Anderson. Other messages reviewed by Officer Vaughan from December 21, 2013, and January 18, 2014, referenced drug sales, appellant's legal issues, and appellant's affiliation with the Crips. Based on these messages, and Officer Vaughan's review of voice messages left for Officer Underhill, Officer Vaughan opined that the combination of gang references, the allusion to "officer eddy," and the use of the "b.p.d. killa" statement showed "a coded threat on Officer Underhill, implying that he get shot."

Following the first day of testimony at appellant's preliminary hearing, appellant chose to plead no contest to counts 1-3 and counts 6-7 of the amended complaint. In exchange, appellant would receive a total sentence of four years, four months. With respect to appellant's no contest plea on count 7 specifically, the prosecutor read, and

4

appellant pleaded to, the charge as follows: "[I]n Count 7 of the Amended Complaint, it is alleged that on December 21st of 2013, you did threaten or attempt to threaten Officer Shaun Underhill in order to prevent him from conducting a duty imposed upon him by law, in violation of Penal Code Section 69."

The trial court engaged in the standard plea colloquy with appellant. When the court asked whether the police report contained a sufficient factual basis for the plea, appellant's counsel responded: "I would ask the Court to stipulate to a factual basis based on what's been heard at the preliminary hearing. [¶] Otherwise, I'd be happy to stipulate to a factual basis via *People v. Palmer* [(2013) 58 Cal.4th 110] and discuss that I have discussed the crimes, elements, and defenses with my client, and do believe that he is aware of all and wishes to plead today." In response, the prosecutor stated: "I will - - I would accept that. [¶] And I believe we have a record from the testimony at the preliminary hearing to support a factual basis." The court then found a factual basis existed and accepted appellant's plea.

On June 5, 2014, appellant was sentenced in line with the plea agreement. The trial court initially ordered a restitution fine under Penal Code sections 1202.4, subdivision (b), and 1202.45, of $280. However, the probation officer recommended that the fine "be at $300, as a couple of these crimes occurred in 2014." The trial court responded by amending the fines to $300.

This appeal timely followed and appellant was granted a Certificate of Probable Cause following claims "he did not understand what he was doing when he entered into his plea" and "that he did not understand the consequences of his plea."

## DISCUSSION

Appellant makes two allegations of error. First, appellant claims there was an insufficient factual basis to establish a violation of count 7. Second, appellant claims he suffered a due process violation or, in the alternative, ineffective assistance of counsel when the trial court raised the restitution fees to $300.

5

***Allegedly Insufficient Factual Basis For Appellant's Plea***

Appellant argues the evidence produced at his preliminary hearing was insufficient to support the conclusion that his Facebook posts were actual threats, as opposed to protected First Amendment expressions. Appellant further argues the evidence presented was insufficient to "establish that appellant harbored a specific intent to deter Underwood from performing his official duties." The People respond that appellant is precluded from making this argument because he chose to plead no contest to the charges. We agree with the People.

*Standard of Review and Applicable Law*

Under Penal Code section 1192.5, when a trial court accepts a plea of guilty or no contest, it shall "cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea." (Pen. Code, § 1192.5 ¶ 3.) In doing so, "the trial court must garner information regarding the factual basis either from the defendant or defense counsel." (*People v. Holmes* (2004) 32 Cal.4th 432, 442 (*Holmes*).) "If the trial court inquires of defense counsel regarding the factual basis, counsel may stipulate to a particular document that provides an adequate factual basis, such as a complaint, police report, preliminary hearing transcript, probation report, grand jury transcript, or written plea agreement." (*Ibid.*) The trial court may also "satisfy its statutory duty by accepting a stipulation from counsel that a factual basis for the plea exists without also requiring counsel to recite facts or refer to a document in the record" provided that "the plea colloquy reveals that the defendant has discussed the elements of the crime and any defenses with his or her counsel and is satisfied with counsel's advice." (*People v. Palmer* (2013) 58 Cal.4th 110, 118 (*Palmer*).)

When a defendant pleads guilty or no contest, " 'the plea is deemed to constitute a judicial admission of every element of the offense charged. [Citation.] Indeed, it serves as a stipulation that the People need introduce no proof whatever to support the

6

accusation:  the plea ipso facto supplies both evidence and verdict.' " (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1363-1364 (*Voit*).)

To appeal after conviction by a plea of guilty or no contest, a defendant must obtain a certificate of probable cause.  (Pen. Code, § 1237.5.)  "Under [Penal Code] section 1237.5, a defendant may appeal from a conviction on a plea of guilty or no contest only on grounds going to the legality of the proceedings; such a plea precludes appellate consideration of issues related to guilt or innocence, including the sufficiency of the evidence to support the conviction."  (*Palmer*, *supra*, 58 Cal.4th at p. 114.)  "Issues concerning the defendant's guilt or innocence are not cognizable on appeal from a guilty plea.  [Citation.]  By admitting guilt a defendant waives an appellate challenge to the sufficiency of the evidence of guilt.  [Citation.]  The same restrictions on appellate issues apply after a no contest plea .…"  (*Voit*, *supra*, 200 Cal.App.4th at p. 1364.)  " 'The issuance of a certificate of probable cause pursuant to [Penal Code] section 1237.5 does not operate to expand the grounds upon which an appeal may be taken as that section relates only to the "procedure in perfecting an appeal from a judgment based on a plea of guilty." ' "  (*Ibid.*)

"[A] trial court possesses wide discretion in determining whether a sufficient factual basis exists for a guilty plea.  The trial court's acceptance of the guilty plea, after pursuing an inquiry to satisfy itself that there is a factual basis for the plea, will be reversed only for abuse of discretion.  [Citation.]  A finding of error under this standard will qualify as harmless where the contents of the record support a finding of a factual basis for the conditional plea."  (*Holmes*, *supra*, 32 Cal.4th at p. 443.)

*Appellant Cannot Challenge the Sufficiency of the Evidence on Appeal*

In this case, the trial court satisfied its statutory duty to determine whether a factual basis existed for appellant's guilty plea when it inquired of counsel whether such facts could be found in the police reports.  In response, appellant's counsel not only stipulated that a sufficient factual basis could be found in the preliminary hearing

7

testimony, but further stipulated to the existence of a factual basis under *Palmer*. Under this later stipulation, appellant conceded a factual basis existed without any reference to facts in the record, a position that is permitted where appellant has properly discussed the plea with counsel. This is all that was necessary to accept appellant's plea under Penal Code section 1192.5 under the facts of this case.

Appellant's argument on appeal suggests the trial court, looking specifically to the evidence in the preliminary hearing, could not have accepted a plea in this case because the facts would not support it. Appellant's heavy reliance on *People v. Nishi* (2012) 207 Cal.App.4th 954 confirms his appeal is directly related to whether or not sufficient evidence supported his decision to plead guilty. In *Nishi*, the defendant appealed following a jury's verdict that he had violated Penal Code section 69, arguing there was insufficient evidence support the verdict. (*Id.* at p. 957.) Its reasoning and analysis is therefore distinguishable from this case, where appellant's guilty plea precludes the argument made in *Nishi*. As explained in *Voit*, by admitting guilt, appellant waived an appellate challenge to the sufficiency of the evidence of his guilt.[2] (*Voit*, *supra*, 200 Cal.App.4th at p. 1364.)

### *Alleged Due Process Violation*

Appellant also contends the $300 restitution fines imposed violate his right to due process as ex post facto applications of an increase to the minimum fine that took effect in 2014. As appellant puts it, "since it is evident the court intended to impose the minimum restitution fine, it erred and deprived appellant of due process by relying on a statutory authorization that did not go into effect until 2014, when appellant's offense was committed in 2013." To the extent this issue was waived by a failure to object,

---

**2** Although we need not reach the issue, we note the evidence shows that appellant's statements would be understood as a threat to shoot Officer Underhill, and that Officer Underhill understood them to be threatening.

8

appellant contends that failure constitutes ineffective assistance of counsel. We do not agree.

*Standard of Review and Applicable Law*

Restitution fines in criminal cases are governed by Penal Code sections 1202.4 and 1202.45. Under Penal Code section 1202.4, upon conviction of a crime the court "shall order the defendant to pay" a "restitution fine" in line with the statutory guidance. (Pen. Code, § 1202.4, subds. (a)(2), (a)(3)(A).) Under Penal Code section 1202.45, in every case where there is a conviction and the sentence includes a period of parole, the court must enter an additional restitution fine in the same amount as that ordered under Penal Code section 1202.4. (Pen. Code, § 1202.45, subd. (a).)

Penal Code section 1202.4, subdivision (b)(1) provides that "[t]he restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than … two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000)." Subdivision (b)(2) provides a formula for calculating the restitution fine, as follows: "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (Pen. Code, § 1202.4, subd. (b)(2).) Finally, under subdivision (d), when setting the amount of the restitution fine "in excess of the minimum fine pursuant to paragraph (1) of subdivision (b), the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime." (Pen. Code, § 1202.4, subd. (d).)

"In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim." (*People v. Scott* (1994) 9 Cal.4th 331, 351.) This doctrine applies to restitution awards. (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218 (*Garcia*).)

Where counsel wrongly fails to object, a claim of ineffective assistance of counsel may arise. However, such a claim requires the court to consider "whether counsel's assistance was reasonable considering all the circumstances." (*Strickland v. Washington* (1984) 466 U.S. 668, 688.) This analysis requires demonstrating both that counsel's conduct was deficient and that the deficient performance prejudiced the defense. (*Id.* at p. 687.) " 'Tactical errors are generally not deemed reversible; and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.…" ' " (*People v. Hart* (1999) 20 Cal.4th 546, 623-24 (*Hart*).) "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." (*Strickland*, *supra*, 466 U.S. at p. 694.)

*Appellant Cannot Show Ineffective Assistance of Counsel from the Waiver*

The record shows that no objection was made to the initially proposed or amended restitution award. Appellant thus waived any objection to the amount of the restitution fine. (*Garcia*, *supra*, 185 Cal.App.4th at p. 1218 ["The appropriate amount of restitution is precisely the sort of factual determination that can and should be brought to the trial court's attention if the defendant believes the award is excessive. Here, because

defendant did not object to the amount of restitution in the trial court, he forfeited our consideration of the issue on appeal."].)

As noted previously, appellant contends that a finding of waiver demonstrates he suffered ineffective assistance of counsel. The failure to object to the amount of a restitution fine is a tactical decision. Appellant argues the record shows the court intended to impose the statutory minimum, which appellant argues would have been $280 because all charged crimes were committed in 2013, and there "could have been no reasonable tactical purpose for failing to bring attention to the court's error."

Regardless of the proper statutory minimum,[3] we do not agree that there could be no reasonable tactical purpose for failing to object to the restitution fine. Accepting appellant's value for the statutory minimum, the defined range for restitution fines spanned from $280 to $10,000. Further, under the statutorily recommended formula for calculating restitution, appellant faced a potential fine of several thousand dollars, as he was convicted of four felonies and was being sentenced to at least four years' imprisonment. (See Pen. Code, § 1202.4, subd. (b)(2) [four felonies multiplied by four years' imprisonment multiplied by, at least, the $280 minimum fine in 2013, equals a fine of $4,480].) Although the court may have been mistaken about the proper minimal fine, it made no express statement that it desired to impose only the minimum or would not consider a higher fine. As such, given the substantial fine appellant faced under the statutory formula, it was tactically reasonable not to object to a potential $20 discrepancy in the fine imposed.

**DISPOSITION**

The judgment is affirmed.

---

**3** Although the People argue that appellant's January 2014 Facebook post shows his crimes continued into 2014, the charge to which appellant ultimately pled guilty alleged specifically that his illegal conduct occurred on December 21, 2013.