Filed 8/14/23  P. v. Noe CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JORDAN JOHN NOE,<br><br>    Defendant and Appellant. | 2d Crim. No. B323016<br>(Super. Ct. No. 22F-01156)<br>(San Luis Obispo County) |

Jordan John Noe appeals from the judgment entered after a court trial.  The court found him guilty of attempting by means of threats to deter an executive officer from performing his duties in violation of Penal Code section 69.[1]  Appellant was sentenced to imprisonment in the county jail for 16 months.

Appellant contends (1) his conviction is unconstitutional because his alleged threats were not "true threats" and therefore were protected speech under the First Amendment of the United

_____

    [1] Unless otherwise stated, all statutory references are to the Penal Code.

States Constitution, (2) the trial court misunderstood the specific intent required for a violation of section 69, (3) the evidence is insufficient to support his conviction, and (4) the record fails to show that he voluntarily waived his right to a jury trial. At appellant's request, we have reviewed the sealed record of an in camera hearing to determine whether the trial court abused its discretion in ruling on his *Pitchess* discovery motion. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).) We affirm.

*Facts*

A 911 call reported that a man who "looks to be drunk or on drugs" was "running in and out of . . . [traffic] lanes." Officer Nolan Parsons drove to the location described by the 911 caller. Parsons saw appellant standing in one of the lanes of traffic. "[H]e was out in the middle of the road." He "was unsteady and had some slurred speech."

Officer Parsons arrested appellant for disorderly conduct in violation of section 647, subdivision (f). The subdivision provides that a person is guilty of disorderly conduct if he "is found in any public place under the influence of intoxicating liquor, [or] any drug . . . in a condition that [he is] unable to exercise care for [his] own safety or the safety of others . . . ." Parsons testified that the arrest was "[b]ased on the totality of [appellant's] mannerisms, his balance, his activity in terms of not being able to make decisions in his best interest, like being in the roadway."

Officer Parsons transported appellant to the county jail. During the ride, appellant threatened Parsons. Appellant said: "[I]f I wanted to I'll punch you in your face I'll put you on the ground fucking snap your neck pull that gun and shoot your face after you're already dead. Just because I wanna see your fucking brains and face explode." "[W]hen you step outta your vehicle I'm

2

ready to splatter your fucking brains on to the cement." "You know what insurgence means? You fucking retard. . . . Insurgence means that we will fucking murder you." "I can't wait till we catch you on the move. . . . [T]here's very big huge humans. . . . They're looking for you now. . . . You need to stay inside land, if you leave your land bro we will . . . fucking saw you legs off . . . ." "Faggot fucking piece of shit, don't you ever disrespect me again." "I will tear your fucking face off I'll eat your mother fucking eyeballs outta your face, I'll fucking pull em' out . . . ." "I'm gonna fucking put you in your fucking grave." "Oh you're done. You're smoke dude." "I can't wait until someone just fucks you. I wish someone could put a bullet through your head . . . ."

When the threats were made, Officer Parsons and appellant were the only occupants of the police vehicle. Parsons was driving, and appellant was in the back seat. "A clear plastic Plexiglass acetate partition" separated the front seat from the back seat.

Appellant's hands were originally cuffed behind his back. But during the ride appellant managed to "slip [the] cuffs underneath [his] feet to where [his] arms [were] now freed in front of [him]." This "[r]ender[ed] [him] capable of causing a lot more harm than if [his] hands [were] behind [him]."

"When [appellant] was being removed from the patrol vehicle," Parsons "specifically kept more distance [from appellant] than normal" because he "was fearful [appellant] was going to try to execute [the] threats" he had made. Officer Parsons explained: "I would typically be the officer who escorted someone in and was close to them . . . . [¶] But given what [appellant] articulated in the car, it wasn't worth risking my

safety because he seemed to be focused on me specifically." Parsons believed appellant's threats were "credible." He "felt fear" when appellant "made the comment about splattering [his] brains."

*Appellant's Conviction Does Not*
*Violate the First Amendment*

Section 69, subdivision (a) provides in relevant part: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law" is guilty of a criminal offense. "[A] conviction under [section] 69 based on threatening speech is unconstitutional if the speech was not a 'true threat.'" (*People v. Smolkin* (2020) 49 Cal.App.5th 183, 188 (*Smolkin*).) Appellant contends that because his "threatening statements were not a 'true threat,' his section 69 conviction violates the First Amendment." "'"True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" (*Ibid.*) "'[A] present ability to carry out threats is not required if . . . the target of the threat could reasonably fear retaliatory action on some future occasion.'" (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 195 (*Sivongxxay*).)

"We make 'an independent examination of the record' in determining whether 'the speech at issue is an unprotected true threat.' [Citation.] Nevertheless, '[b]ecause the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review, nor are findings of fact that are not relevant to the First Amendment issue.' [Citation.] In the present case, the material facts are not in dispute. Thus, we must make an independent

legal determination whether a 'reasonable listener would understand' [appellant's threats] to constitute "'a serious expression of an intent to commit an act of unlawful violence'" 'in light of the context and surrounding circumstances.'" (*Smolkin*, *supra*, 49 Cal.App.5th at p. 188.)

Appellant argues that his threats were not "true threats" because they were "nonsensical and delusional." Therefore, his "statements could not reasonably have caused Parsons to suffer sustained fear."

Appellant relies on *Smolkin*, *supra*, 49 Cal.App.5th 183. There, a section 69 violation was based on the defendant's letter to the district attorney. The defendant said that if the charges against him are not dropped, the "entire [district attorney's] office will be arrested by Russian military police, tried in a rubber stamp trial for kidnapping, and sentenced to death by firing squad . . . ." (*Id*. at p. 186.) The Court of Appeal "conclude[d] that, as a matter of law, a 'reasonable listener' would not have understood [defendant's] . . . letter to be a true threat. This is due to the combination of three factors: first, [his] threats were delusional; second, [his] threatened violence by third parties who were not (except in his delusion) his associates; and third, [he] repeatedly assured he was not threatening to personally commit violence." (*Id*. at p. 189.)

Unlike the *Smolkin* defendant's threats, appellant's threats were not delusional or nonsensical. He did not threaten Officer Parsons with execution by a foreign military force. He threatened to personally kill Parsons: "[W]hen you step outta your vehicle I'm ready to splatter your fucking brains on to the cement." "I will tear your fucking face off I'll eat your mother

5

fucking eyeballs outta your face, I'll fucking pull em' out . . . ." "I'm gonna fucking put you in your fucking grave."

Based on our independent examination of the record, we conclude a "'reasonable [police officer] would understand' [appellant's threats] to constitute "'a serious expression of an intent to commit an act of unlawful violence'" 'in light of the context and surrounding circumstances.'" (*Smolkin*, *supra*, 49 Cal.App.5th at p. 188.) "'"'When [as here] a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection.'" . . .'" (*People v. Nishi* (2012) 207 Cal.App.4th 954, 965.)

*The Trial Court Did Not Misunderstand the*
*Specific Intent Element of a Violation of Section 69*

"[A] violation of section 69 through a threat 'requires a specific intent to interfere with the executive officer's performance of his duties.'" (*Sivongxxay*, *supra*, 3 Cal.5th at p. 195.) Appellant claims the trial court did not understand this mental element of the crime. He maintains the court's comments show it believed appellant had the requisite specific intent because he intended to provoke Officer Parsons into killing him, i.e., he intended to "commit suicide by cop."

The "suicide by cop" theory is based on appellant's cross-examination testimony that he had threatened Officer Parsons because "I think partially I was trying to get him to kill me, if I could. If I could push him to kill me, I figured it would be easier." In rendering its decision on appellant's guilt, the trial court said the "suicide by cop" theory "does make sense to me." The court continued, "[Appellant's] admission on the stand during cross-examination was the final piece of the puzzle for me, the why."

6

Appellant argues, "[T]he trial court's comments unambiguously show that it found [he] threatened Parsons to cause the officer to kill him. Because [his] specific intent to commit suicide does not equate to a specific intent to deter Parson's performance of his duties, the court's comments as a whole show that it relied on an erroneous reading of section 69. Reversal is required."

"As a broad general proposition, cases have stated that a trial court's remarks in a bench trial cannot be used to show that the trial court misapplied the law or erred in its reasoning. [Citations.] These statements are founded on the principle that, in a criminal bench trial, the trial court is not required to provide a statement of decision and that any explanation of his or her decision a trial judge provides is not part of the record on appeal. [Citation.] [¶] This broad proposition has been subjected to an important limitation. . . . [C]ases . . . have held that we may nonetheless consider a judge's statement when, *taken as a whole,* the judge's statement discloses an incorrect rather than a correct concept of the relevant law, 'embodied not merely in "secondary remarks" but in [the judge's] basic ruling.'" (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1302 (*Tessman*).)

"[W]e apply the general rule 'that a trial court is presumed to have been aware of and followed the applicable law. [Citations.]' [Citations.] This rule derives in part from the presumption of Evidence Code section 664 'that official duty has been regularly performed.'" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) "Absent evidence to the contrary, that presumption justifies a finding in this case that the trial court knew the" specific intent requirement of section 69 and properly applied that requirement. (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) The court's "suicide by cop" comments do not preclude a

finding that appellant intended to interfere with Parsons' performance of his duties.  By his threats, appellant could have intended to provoke Parsons into killing him and also to interfere with Parson's duty to transport him to the jail.

The court's comments show only that it considered the "suicide by cop" theory in trying to understand appellant's motive for making the threats.  The comments do not "disclose[] an incorrect . . . concept of the relevant law, 'embodied . . . in [the judge's] basic ruling.'" (*Tessman*, *supra*, 223 Cal.App.4th at pp. 1302.)  "Motive describes the reason a person chooses to commit a crime.  The reason, however, is different from a required mental state such as intent or malice." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 504.)

*Substantial Evidence Supports the Section 69 Conviction*

Appellant maintains the evidence is insufficient to support two elements of a violation of section 69: (1) he had the specific intent to interfere with Officer Parsons' performance of his duty, and (2) he had the present ability to carry out his threats or Parsons could reasonably fear future retaliatory action.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  We . . . 'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People v. Maciel* (2013) 57 Cal.4th 482, 514-515.)

Viewing the evidence in the light most favorable to the judgment, we conclude a reasonable trier of fact could find

8

beyond a reasonable doubt that, when appellant made the threats, he had the specific intent to interfere with Officer Parsons' performance of his duty to transport appellant to the jail.  A reasonable trier of fact could also find beyond a reasonable doubt that Parsons could reasonably fear retaliatory action by appellant on a future occasion.  (See *People v. Walker* (1988) 47 Cal.3d 605, 639 [defendant's "courtroom threat, 'the hell with getting a cop, I'll get me a D.A.,' . . . would support a finding of a violation of section 69"].)  "[A] present ability to carry out threats is not required if, as here, the target of the threat could reasonably fear retaliatory action on some future occasion." (*People v. Hines* (1997) 15 Cal.4th 997, 1060.)

*Appellant Voluntarily Waived His Right to a Jury Trial*

"'[A] defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, ""made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,"'" as well as voluntary ""in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."'""  (*Sivongxxay*, *supra*, 3 Cal.5th at p. 166.)  Appellant claims, "[T]he record fails to show that [his] jury waiver was voluntary."  "The voluntariness of a waiver is a question of law which we review de novo." (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1660.)

The jury waiver proceedings were as follows: The trial court asked appellant's counsel, "[W]hat do you want to do today . . . ?" Counsel responded, "[A]fter discussion, we're prepared to waive jury and have a [c]ourt trial."  The court said to appellant: "So [your counsel] is telling me that you understand that you have a right to a jury trial where 12 [p]eople would decide if you are

9

guilty or not guilty beyond a reasonable doubt, and they would have to do that unanimously. [Counsel] tells me that you want to give up your right to a jury trial, but still have a trial but a judge will make the decision; is that okay with you?" Appellant replied, "Yeah." The court asked counsel if he joined in the waiver. Counsel answered, "I do."

Appellant contends the record fails to show a voluntary jury waiver because "the trial court did not ask [him] [(1)] whether the jury waiver was voluntary or a product of his free will"; (2) "whether 'anybody promised [him] anything, used any force, threats, pressure on [him] of any kind to get [him] to make that decision'"; (3) "whether any threats had been made against him, whether he had been 'subject to any force,' or whether there was 'consideration or [a] secret promise or deal or something' that was pressuring or forcing [him] to waive his right to jury trial"; and (4) "whether he was making his decision freely and voluntarily." But appellant cites no authority requiring the trial court to make any of the above inquiries when taking a jury waiver. Moreover, as the People note in their brief, "[a]ppellant has offered no citation to the record to support that he was coerced, threatened, or was pressured by the court, prosecutor, or anyone else . . . to waive his jury trial right."

Appellant faults the trial court for not making an "express finding of voluntariness." Such a finding is not necessary. (*People v. Smith* (2003) 110 Cal.App.4th 492, 502 ["Although the court did not make an express finding that the waiver was knowing and voluntary, there is no requirement that it do so"].)

Finally, appellant argues that the record does not show a voluntary jury waiver because it "disloses no written jury waiver that might have contained information about whether [his] jury

waiver was voluntary."  No authority requires the jury waiver to be in writing.

"We uphold the validity of a jury waiver "'if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances.'"" (*People v. Daniels* (2017) 3 Cal.5th 961, 991 (lead opn. of Cuéllar, J.)  Appellant has not raised the issue of whether his jury waiver was knowing and intelligent.  He contends only that the record does not show it was voluntary.  Considering the totality of the circumstances, we conclude appellant voluntarily waived his right to a jury trial.

*Pitchess Motion*

"[T]he Legislature has enacted procedures to implement the decision of *Pitchess*[, *supra,*] 11 Cal.3d 531 . . . that allow criminal defendants to seek discovery from the court of potentially exculpatory information located in otherwise confidential peace officer personnel records.  If a party bringing what is commonly called a *Pitchess* motion makes a threshold showing, the court must review the records in camera and disclose to that party any information they contain that is material to the underlying case." (*People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696, 705.)

Appellant filed a *Pitchess* motion seeking discovery of complaints filed and disciplinary action taken against Officer Parsons.  The trial court conducted an in camera hearing during which it heard testimony from the police department's custodian of records.  Based on this testimony, the court ruled that there are no discoverable records.  It ordered the in-camera hearing transcript sealed.

Appellant has requested that "this [c]ourt . . . review the sealed *Pitchess* record to determine whether the lower court

abused its discretion by concluding there was no relevant discoverable information to turn over to the defense." (See *People v. Prince* (2007) 40 Cal.4th 1179, 1285 ["This court routinely independently examines the sealed records of such in[-]camera hearings to determine whether the trial court abused its discretion in denying a defendant's motion for disclosure of police personnel records"].) "We have reviewed the record under seal and independently conclude that the trial court did not abuse its discretion in its ruling upon the *Pitchess* motion." (*Id.* at p. 1286.)

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, J.

We concur:


GILBERT, P. J.


CODY, J.

12

Craig B. Van Rooyen, Judge

Superior Court County of San Luis Obispo

_____

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Rama R. Maline, Deputy Attorney General, for Plaintiff and Respondent.